OILER and Another v. GARD and Another.

MISTAKE.—Relief will be granted in cases of mistake in written instruments only when there is a plain mistake, clearly made out by satisfactory proofs. Page 217.

SAME—IGNORANCE OF LAW.—A mistake or ignorance of law forms no ground of relief from contracts fairly entered into, with full knowledge of the facts, under circumstances raising no presumption of fraud, imposition, or undue advantage taken. 219.

EVIDENCE—WRITTEN INSTRUMENTS.—All oral negotiations or stipulations between the parties which preceded or accompanied the execution of a written instrument, are to be regarded as merged in it, and it is to be treated as the exclusive medium of ascertaining the contract by which the parties bound themselves. Page 217.

APPEAL from the *Clinton* Common Pleas.

GREGORY, J.—This case has been in this court before, but from some oversight was not reported. After the previous decision, the plaintiffs, in the court below, filed an amended complaint, in which they averred that they entered into a contract with appellants, whereby it was agreed that they were to furnish and deliver to plaintiffs immediately, at their warehouse at *Middlefork*, a large amount of good merchantable white wheat—to-wit: four hundred bushels and upward; and that, on the delivery of said wheat, appellees were to advance $416 in money, for which appellants were to give their note due one day after date. And it was further agreed that appellants should, after such delivery, make final sale of said wheat, at such time as they might elect, on or before the 1st day of *June*, 1858; but if they should fail to elect a prior date, said sale was to be considered absolute on that date. And it was further agreed, by said parties, that whenever such sale was finally concluded as aforesaid, they would have a complete settlement of the whole transaction, and appellees were to allow the market price at *Logansport* for wheat of the quality so delivered at the date of such final sale, less ten cents per bushel; and if it should appear that the aggregate price of the wheat amounted to or exceeded the

principal and interest due on said note at the time of the settlement, appellees were to surrender the note, and pay the overplus, if any, in money; but if, on the other hand, the price of said wheat as aforesaid should fall short of the amount then due on said note, appellants were to pay such deficit in discharge of said note. That, in pursuance of said agreement, appellees advanced to appellants $416, for which they executed their note as aforesaid, waiving, etc.; a copy of which is filed. And appellants delivered to them four hundred and nineteen and thirteen sixtieths bushels of white wheat as aforesaid, but wholly failed to elect to make a final sale as aforesaid of said wheat prior to the 1st day of *June*, 1858; wherefore said sale became absolute on that day. That the aforesaid quality of wheat was worth at *Logansport* on that day sixty-five cents per bushel; that therefore the value of said wheat at *Middlefork* on that day was $230.57 cents; that the principal and interest of the note on that day were $435.76, leaving a balance on the note of $205.25, which was wholly due and unpaid, etc., subject to a credit of $75 of *April* 21, 1858, indorsed on said note, etc.

The appellants demurred to this complaint. The demurrer was overruled. This was right.

The appellants filed an answer in two paragraphs. *First*—General denial. *Second*—That the wheat was sold and delivered by a special contract in writing; that the wheat was delivered in three separate parcels; that on the delivery of the first parcel of three hundred and eighty-one bushels, the following agreement was executed in writing:

"*Middlefork, August* 15, 1857.

"Received of *Hendrickson & Oiler* three hundred and eighty-one bushels of white wheat, for which we agree to pay the market price at *Logansport*, less ten cents per bushel, when called for.

"(Signed,)                         RODKEY & GARD."

That the second parcel of twenty and forty-three sixtieths bushels of white wheat was sold and delivered without writing, but on the same terms as the other parcels; that the third parcel of seventeen and thirty sixtieths bushels was sold and delivered on this contract in writing:

"*Middlefork*, October 19, 1857.

"Received of *Hendrickson & Oiler* seventeen and thirty sixtieths bushels white wheat, for which we agree to pay them the *Logansport* price, less ten cents per bushel, when called for.

"(Signed,)                    RODKEY & GARD."

Making four hundred and nineteen and thirty-sixtieths bushels as claimed by appellee's complaint. And that between the parties there was no contract touching said wheat other than that contained in the writings aforesaid; that on the 21st day of *September*, 1858, the appellants elected to take payment for said wheat at the ruling price at that time, which was ninety cents per bushel at *Logansport*, and thereupon, at the date last aforesaid, they demanded payment for said wheat at the rate of eighty cents per bushel, according to said contract, which then amounted to $335.37; that on, etc., the appellants paid appellees $75 on said note; that appellants on, etc., served appellees with a written notice offering to confess judgment for $35; and now renew that offer, and pray judgment for costs, etc.

The appellees filed a reply to the second paragraph of the answer in five paragraphs. A demurrer was sustained to the second, and the third was withdrawn.

The appellants demurred to the first, fourth, and fifth paragraphs of reply, and the demurrers were overruled, and they excepted.

The following is the first paragraph of said reply:

"1. Come plaintiffs and, for reply to defendants' answer, say, they admit that no other wheat was delivered to them by defendants than the amount referred to in their complaint; they admit that said wheat was delivered to them in

Oiler and Another *v.* Gard and Another.

three separate lots or parcels, in the amounts and at the times specified by defendants; they also admit the execution of the writings, copies of which are set out in said answer, but deny said instruments of writing were drawn for the purpose of expressing, and conforming to and with, the intention of the parties as understood and agreed to by the terms of the contract specified in plaintiffs' complaint, but that, by inadvertance of the draftsman, said writings failed to express the understanding, intention, and wish of the parties in this: it was the intention and understanding of the parties that the sale of said wheat was to be made final at any time between the date of delivery and the first day of *June*, 1858; whereas said instruments of writing fix the time of sale, and payment ' when called for.' Plaintiffs admit the demand of payment by defendants at the time specified in their answer, but say it was after the time, by the terms of their contract, they were authorized to make said election and demand; wherefore they ask judgment."

We think the demurrer ought to have been sustained to this paragraph of the reply.

There is no allegation of *mistake, fraud,* or *accident* in *drafting* these writings; for aught that appears in this reply, they contain all that the parties intended they should.

The appellees *deny* that the writings were drawn for the purpose of expressing the intention of the parties as understood and agreed by the terms of the contract specified in plaintiffs' complaint; if this is so, and the averments of the pleader must be taken most strongly against himself, we do not readily perceive how there could have been a *mistake* in *drawing* the instruments in respect to the matter complained of.

If the parties, at the time the writings were drawn, did not intend to make them conform to the previous contract, then there could not have been such a *mistake* in this respect as a court of equity will relieve against. However much the parties may have been *mistaken* in the legal effect

of the writings, that can not, unaccompanied by other circumstances, be made the ground for equitable relief.

The fourth and fifth paragraphs of the reply are substantially the same; the fourth is as follows:

" 4. And for further reply plaintiffs admit the delivery of the wheat referred to in defendants' answer at the times and in the quantities therein set forth; they also admit the execution of the written instruments referred to therein, but say said instruments were drawn by the said *Gard*, one of the above named plaintiffs', with the purpose and intention of conforming to the previous oral contract referred to, and set out in plaintiffs' complaint, and that defendants so received them at the time, and so expressed and indicated their intention to plaintiffs, but intending to violate their said contract, and commit a fraud upon plaintiffs, failed to elect when the sale of said wheat should become absolute until the 21st day of *September* 1858, intending thereby to defraud plaintiffs, and obtain a much higher price for said wheat than by the terms of their contract they were entitled to," etc.

This reply does not amount to an averment of either *mistake* or *fraud*. The fraud complained of did not lead to the execution of the writings, but only existed in the mind of the appellants in reference to their future conduct.

It is not alleged that *Gard* could not read, nor that the writings were misread to him by the appellants.

The instruments were open to his inspection, and indeed, in the fourth paragraph of the reply, it is averred that *Gard* wrote them; in contemplation of law, *Gard* knew their contents and purport.

The court below erred in not sustaining the demurrers to the fourth and fifth paragraphs of reply.

In the progress of the trial, objections were made in the introduction of evidence tending to prove the oral agreement set forth in the complaint. This evidence was proper under the issues; the general denial put in issue the matters averred by the plaintiffs; and to prove that issue

the testimony offered was legitimate. But on the other issues made that evidence ought to have been disregarded. Parol testimony can not be received to contradict or vary the terms of a written agreement.

The writings set up in the defense are contracts as well as receipts. As contracts they control as to the time when the price of the wheat was to be determined; and together with the note, they contain the entire contract of sale.

As a general rule, where the contract of sale has been consummated by writing, the presumption is the writing contains the whole contract. *Van Ostend* v. *Reed*, 1 Wend. 424; *McClure* v. *Jeffrey*, 8 Ind. 79.

The rule is, that all oral negotiations or stipulations between the parties, which preceded or accompanied the execution of the instrument, are to be regarded as merged in it, and that the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves. Cowen & Hill, notes to Phil. Ev., part 2, p. 594; *McClure* v. *Jeffrey, supra.*

Something is said by counsel about the fact that a small lot of wheat of some twenty bushels was delivered without writing. On the trial a written admission, signed by appellees, was read to the jury, as follows: " We admit that the lot of wheat not receipted for, amounting to twenty and forty-three sixtieths bushels, was subject to the same conditions as the lots receipted for."

The appellees can only be relieved from their written contract on the ground of *fraud* or *mistake.*

The jury found a special verdict, in which they negative all fraud, and they also found " that *Gard* drew the receipts for the wheat, and that he knew just what he had written."

The evidence is in the record.

We have carefully looked through the testimony, and we think the verdict is clearly against the evidence.

Judge *Story* correctly states the rule to be, that " relief will be granted, in cases of written instruments, only when there is a plain *mistake*, clearly made out by satisfactory

proofs." 1 Story's Eq., sec. 157. He adds that the rule "forbids relief whenever the evidence is loose, equivocal, or contradictory, or it is in its texture open to doubt or to opposing presumptions."

This court, in the case of *Dale* v. *Evans and Others*, 14 Ind. 288, stated the canons of evidence on this subject correctly. And, in the light of these authorities, the testimony of the witness, *Smith*, who testified to a *conversation* he had with *Oiler* in *April*, 1858, is not to be considered on the issue of *mistake* in the writings. The only witnesses who testify in relation to the execution of the writings are *Gard* and *Oiler*. *Oiler* swears that, by an arrangement with *Rodkey*, the oral agreement was abandoned. *Rodkey* does not testify. *Gard* swears that he had no knowledge of the oral contract being abandoned. *Oiler* swears that there was no *mistake;* that the writings express the contract. *Gard*, on this subject, testifies as follows : " The difference in the receipts and the contract is, that the contract required the wheat to be called for by the 1st of *June*. *I only intended the writing as a receipt for the wheat, and intended to carry out the original contract. I only intended it as a receipt for so many bushels of wheat as carrying out the contract.* There was a mistake in it by not saying the 1st of *June*. *There is no word in it that I did not understand, and none in it I did not intend to put in it; I could see all that was in it. I drew the second receipt on the* 19*th day of October, in the same language. There is nothing in the papers that I could not read.*"

In the case of *Shelburne* v. *Inchiquin*, 1 Brown's Ch. R. 350, Lord *Thurlow* said : " It must be an essential ingredient to any relief under this head, that it should be on an accident perfectly distinct from the sense of the instrument."

In the case of *Fishback* v. *Woodford*, 1 J. J. Marshall, (Ky.) 84, the court said : "But the mistake or fraud must be in the execution of the note. It is not proved that the language or import of the note was not well understood, or that either was different from what was intended by the parties when it was written and signed."

The testimony of *Gard* fails to show that there was any thing omitted in the writings of the 15th of *August* and the 19th of *October*, 1857, which was, at the time of their execution, intended to be inserted.

*Gard* understood the language and import of the papers, but he did not understand their legal effect. This was a *mistake of law*, unattended by such circumstances as would entitle him to relief in equity. A mistake or ignorance of the law forms no ground of relief from contracts fairly entered into, with full knowledge of the facts, under circumstances raising no presumption of fraud, imposition, or undue advantage taken. *Bank of the United States* v. *Daniel*, 12 Peters' Rep. 32.

The judgment is reversed; cause remanded to said court with directions to sustain the demurrers to the first, fourth, and fifth paragraphs of the reply, and for further proceedings in accordance with this opinion. Costs here.

*McDonald & Roache* and *Davidson & Purden*, for appellants.

*L. McClurg* and *James N. Simms*, for appellees.