Fleetwood v. Brown.

The court erred in instructing the jury that they might assess the penalty against the appellants.

Judgment reversed.

Filed Feb. 19, 1887.

———————◆———————

No. 12,834.

FLEETWOOD v. BROWN.

PROMISSORY NOTE.—*Consideration.*—*Conveyance.*—*Failure of Title.*—*Quitclaim Deed.*—*Mutual Mistake of Fact.*—*Estate of Absentee.*—A father abandoned his family and property and left the State, his whereabouts being unknown to them for six years. Five years after his disappearance, both believing him to be dead, a daughter conveyed to a brother, by quitclaim deed, her interest in the real estate, the latter paying a part of the consideration in money and giving his promissory note for the balance. The father subsequently returned, excluded his son from possession of the land, and sold it. Action by the daughter on the note, and an answer by the defendant setting up the facts, and tendering a deed to the land conveyed.

*Held*, that the answer states a good defence.

SUPREME COURT.—*Rehearing.*—*Practice.*—Questions not presented and discussed on the original hearing of a cause will not be considered on petition for a rehearing.

SAME.—*Pleading.*—*Evidence.*—*Harmless Error.*—The Supreme Court will not look to the evidence to determine whether or not the sustaining of a demurrer to a good paragraph of answer was a harmless error.

From the Jackson Circuit Court.

*W. K. Marshall* and *J. B. Brown*, for appellant.

*B. H. Burrell, J. F. Applewhite* and *R. A. Applewhite*, for appellee.

ZOLLARS, J.—This action is by appellee upon a promissory note, executed by appellant. The first alleged error, argued by appellant, is the sustaining of a demurrer to the second paragraph of his answer. That paragraph may be summarized as follows:

In 1879, Jesse Fleetwood, the father of the parties hereto, was the owner of two hundred and forty acres of land in Jackson county, and was a resident of that county, where also his wife and children, including the parties hereto, resided, and have still resided. In that year, Jesse Fleetwood abandoned his family and property and left the State, and his whereabouts was unknown to the parties hereto, and to the other members of his family, until he returned in June, 1885. Upon his return, he took possession of his lands, excluding others therefrom, and afterwards sold the lands. In September, 1884, at the time the note in suit was executed, for a long time prior thereto, and afterwards, until his return in June, 1885, the parties hereto, and the balance of the family supposed and believed that he was dead. After his departure, and before the note in suit was executed, his wife, the mother of these parties, died. If he had been dead, as supposed, appellee, as one of his heirs, would have been the owner of the undivided one-eleventh part in value of the lands. Acting upon the belief that he was dead, and that she was, therefore, such owner, she sold that interest to appellant, and executed to him a quitclaim deed, without covenants of warranty. He paid a small part of the agreed purchase-price in cash, and gave his note, being that in suit, for the balance. Jesse Fleetwood had no knowledge that such a deed had been executed until after his return, never recognized it as of any force, and, as already stated, took possession of the lands, excluded appellant therefrom, and sold them.

It is alleged that the supposed death of Jesse Fleetwood was the controlling fact that induced the sale and purchase; that if the parties had known that he was alive, appellee would not have sold, or attempted to sell, any supposed interest in the lands, and appellant would not have purchased, or given the note; that the whole transaction, including the execution of the note, was the result of a mutual mistake of

fact, and that, therefore, as appellant got nothing, appellee should not be allowed to collect the note.

Appellant, with the answer, tendered a quitclaim deed to appellee, for the interest described in her deed to him.

It seems to us that this paragraph of answer makes a clear case of a mutual mistake of fact, and a mistake as to a fact that underlies the whole transaction. Had Jesse Fleetwood been dead, appellee would have owned an interest in his lands, which she might have conveyed so as to transfer to her grantee a thing of value. As it was, she owned no interest at all in the lands that she could convey; she parted with nothing by the attempted conveyance, and appellant got absolutely noth-- ing for the cash he paid and the note in suit.

The deed executed by appellee, as we have seen, was a quitclaim, without covenants of warranty, but we are unable to understand how that fact can deprive appellant of the defence set up in the answer under consideration. The defence is not based upon the deed, but upon a fact back of it—upon the mutual mistake of the parties which led to its execution, and to the execution of the note. But for that mistake, neither instrument would have been executed. The mistake was thus in relation to a material fact. That appellant was mistaken as to that fact, was not the result of any negligence on his part.

Jesse Fleetwood had been absent and unheard of for such a length of time that for some purposes he was presumed to be dead. R. S. 1881, section 2232, et seq.; Acts 1883, p. 209.

In any event, the parties were not negligent in believing him to be dead, and in acting upon that belief. We feel quite secure in holding, that upon the facts set up in the answer, which the demurrer admits are true, appellant should not be compelled to pay the note.

Judge Story, in his work on Equity Jurisprudence, at section 140 of volume 1, says: "The general rule is, that an act done or a contract made under a mistake or ignorance of a material fact is voidable and relievable in equity." In section

141 of the same volume of the work, he gives the following example : "A. buys an estate of B., to which the latter is supposed to have an unquestionable title. It turns out upon due investigation of the facts, unknown at the time to both parties, that B. has no title (as if there be a nearer heir than B., who was supposed to be dead, but is in fact living) ; in such a case equity would relieve the purchaser and rescind the contract."

Another example of the application of the rule is given in section 143a, as follows : " So if a horse should be purchased, which is by both parties believed to be alive, but is at the time of the purchase in fact dead, the purchaser would upon the same ground be relieved by rescinding the contract if the money was not paid, and if paid, by decreeing the money to be paid back."

The doctrine of this learned author, as contained in the sections cited and in other sections, and our conclusion in this case, are fully sustained by our own cases. *Lewellen* v. *Garrett*, 58 Ind. 442 (26 Am. R. 74) ; *Brown* v. *College Corner, etc., G. R. Co.*, 56 Ind. 110 ; *Worley* v. *Moore*, 97 Ind. 15 ; *Solinger* v. *Jewett*, 25 Ind. 479.

Counsel for appellee cite the cases of *Shuler* v. *Hardin*, 25 Ind. 386, and *Atherton* v. *Toney*, 43 Ind. 211.

The latter case was one where a party purchased an equity of redemption, received a quitclaim deed, and executed his note for the purchase-money. He bought an outstanding mortgage, and undertook to set it off against his note given for the land. It was held, that in the absence of a special contract, or without some special circumstances, the purchaser should be held to have taken the land charged with the encumbrance ; that to hold otherwise would be inequitable, as it would enable the purchaser to take from the vendor the equity of redemption, without paying him therefor. The case of *Shuler* v. *Hardin, supra*, is similar.

Manifestly, those cases are so different from that before us, that the rulings there are not controlling here, as against

Fleetwood *v.* Brown.

appellant's answer. Those cases were correctly decided, upon principles of equity, and there is nothing in the decisions that in any way conflicts with our conclusions in this case; indeed, the principles of equity which underlie the decisions there made require the ruling we make here.

It results from what has been said, that the court below erred in sustaining the demurrer to the second paragraph of appellant's answer.

Judgment reversed, with costs, and cause remanded, with instructions to the court below to overrule the demurrer to that paragraph of answer.

Filed Nov. 20, 1886.

## ON PETITION FOR A REHEARING.

ZOLLARS, J.—Whatever appellee is entitled to under the law should be freely awarded to her by the courts, but there is certainly nothing in her case, if the facts stated in the second paragraph of appellant's answer are true as admitted by the demurrer, calculated to excite a great degree of zeal and emphasis on the part of counsel, nor to require "haste" on the part of the courts to strain the law in order that she may recover.

The second paragraph of appellant's answer shows that the parties are brother and sister. It is averred in that answer, that the note in suit was the result of a mutual mistake of fact, and that for it appellant received absolutely nothing. Admitting that to be true, as appellee did by her demurrer, she yet insisted and still insists that she should recover the amount of the note.

Her counsel again contend, that the court below did not err in sustaining the demurrer to that paragraph of the answer, and for the first time insist that, if it did, the error was a harmless one.

It has long been the settled practice of this court, that questions not presented and discussed upon the original hearing, will not be noticed upon a petition for a rehearing.

2 Works Pr., section 1116, and cases there cited. Not only was it not claimed upon the original hearing, that the error, if any, was harmless because the facts set up in the second paragraph might have been proven under other paragraphs of the answer, but the case was submitted upon the theory that the several paragraphs set up separate and distinct defences. Notwithstanding that, we examined the record to ascertain whether or not there was any other paragraph of answer under which the facts set up in the second paragraph might have been proven. We concluded then, and have no hesitation in holding now, that there was not. The second paragraph was the only answer setting up the mutual mistake of the parties. It was held in the opinion delivered upon the hearing, that the second paragraph of the answer was good, and that hence the court below erred in sustaining the demurrer thereto. Further investigation and reflection have strengthened our convictions in that regard.

It can not be said that the error was a harmless one. It is settled in this State, that the sustaining of a demurrer to a good paragraph of an answer will be a harmless error, if the defendant has another paragraph under which the same matters are admissible in evidence. So it was held in the cases of *Mason* v. *Mason*, 102 Ind. 38, *McGee* v. *Robbins*, 58 Ind. 463, *Johnson* v. *Putnam*, 95 Ind. 57, *Moore* v. *Boyd*, 95 Ind. 134, *Epperson* v. *Hostetter*, 95 Ind. 583, *Luntz* v. *Greve*, 102 Ind. 173, and *Landwerlen* v. *Wheeler*, 106 Ind. 523, now cited by counsel.

Such, however, is not the case before us. Here, as we have seen, there was no other paragraph of answer under which the facts set up in the second paragraph were admissible in evidence.

It is further claimed that the judgment is right upon the evidence, and that, therefore, the error in sustaining the demurrer to the second paragraph of the answer should be regarded and treated as a harmless error. In support of that contention, are cited the cases of *Campbell* v. *Nebeker*, 58

Ind. 446, *Layman* v. *Shultz*, 60 Ind. 541 (547), *Gallagher* v. *Himelberger*, 57 Ind. 63, and *Landwerlen* v. *Wheeler*, *supra*.

In the first three cases, the errors complained of arose in the trial of the causes, and not in the overruling of demurrers to good paragraphs of answers.    The case last cited announces the well settled rule, that the sustaining of a demurrer to a good paragraph of an answer will be regarded as a harmless error if there is another paragraph under which the same facts may be proven.    It was not therein held, or intended to be held, that this court may look to the evidence to ascertain whether or not the sustaining of a demurrer to a good paragraph of an answer was a harmless error.    It has never been so held by this court.    On the contrary, the holding has been, that in such a case, the evidence is not to be looked to for the purpose of discovering whether the ruling did or did not do harm.    The rule, and the reason of it, are fully stated in the case of *Wilson* v. *Town of Monticello*, 85 Ind. 10.    The sustaining of a demurrer to a good paragraph of an answer, when there is no other paragraph under which the same facts may be proven, is, in effect, a decision by the court that the facts thus set up do not constitute a defence, and are not admissible in evidence.    And although the record might show that some such facts as those specially pleaded were admitted in evidence, this court has no way of knowing that other facts in support of the plea might not have been brought forward by way of evidence, had the court not ruled the plea insufficient as a defence.    See, also, *Pennsylvania Co.* v. *Poor*, 103 Ind. 553; *Pennsylvania Co.* v. *Marion*, 104 Ind. 239.

It was claimed upon the submission of the cause, and is now claimed in the petition for a rehearing, that because the deed from appellee to appellant was a quitclaim deed, without covenants, appellant can not defend against the note.    In support of that contention appellee's counsel cite *Oiler* v. *Gard*, 23 Ind. 212, *Shuler* v. *Hardin*, 25 Ind. 386, *Shumaker* v. *Johnson*, 35 Ind. 33, *Headrick* v. *Wisehart*, 41 Ind. 87,

*Atherton* v. *Toney,* 43 Ind. 211, *Jones* v. *Noe,* 71 Ind. 368, *Beal* v. *Beal,* 79 Ind. 280, and *Axtel* v. *Chase,* 83 Ind. 546, and claim that if the holding in the principal opinion is correct, they should be overruled, as it is in conflict with them.

In the principal opinion we showed the difference between this case and the cases of *Shuler* v. *Hardin, supra,* and *Atherton* v. *Toney, supra.* Those cases need be no further noticed.

The holding in the case of *Oiler* v. *Gard, supra,* was, that mistake or ignorance forms no ground of relief from contracts fairly entered into with full knowledge of the facts, etc.

In the case before us, the parties did not have full knowledge of the facts. As stated in the answer, they acted upon the assumption that Jesse Fleetwood, the owner of the land, was dead. In that they were mutually mistaken.

In the case of *Shumaker* v. *Johnson, supra,* there was no mistake of fact, and hence that case is not authority in any way in conflict with our holding here.

And so, in the case of *Headrick* v. *Wisehart, supra,* there was no question as to any mistake of facts. It was held that the grantor in a quitclaim deed could not be held upon a verbal promise to pay back taxes.

In *Jones* v. *Noe, supra,* the question arose under a warranty deed. It was held that the vendee could not successfully resist the payment of a note for the purchase-money, or recover more than nominal damages, while he retained possession of the land, and had suffered no inconvenience or expense by reason of the vendor's want of title. That holding was correct, and rested upon the reason that underlies all such cases, and that is, the possibility of the possession ripening into title. *Small* v. *Reeves,* 14 Ind. 163.

In the case before us, appellant was not in the possession of the land, but had surrendered the possession to the rightful owner, as he had a right to do under the ruling in the case of *Axtel* v. *Chase,* 83 Ind. 546 (558), cited by counsel.

There is nothing in any of the cases cited by counsel at all in conflict with what we here hold.

In the case of *Dodge* v. *Briggs*, 27 Fed. R. 160 (167), cited by counsel, it was said that a person accepting a quitclaim deed is chargeable with notice of such invalidity of the grantor's title, as he might have ascertained by inquiry. Here appellant had no way by which he could learn that the father was still living; no one knew that, or had any way of knowing it, until he returned.

We adhere to our former ruling, and overrule the petition for a rehearing.

Filed April 28, 1887.