# E. B. CLEMENT v. J. D. GOULD.

*Deed, construction of. Mill privilege. Estoppel. Damages.*

1. In 1833, S., being the owner of a mill privilege and land on both sides of the stream, conveyed to H. a parcel of this land "for the express purpose of erecting a grist-mill, and a woolen or cotton factory, with a right to draw from said flume and dam sufficient water to be used for the purpose of manufacturing grain into meal and flour, and also for the purpose of manufacturing wool or cotton into cloth, and for those purposes only, and reserving to himself, his heirs and assigns, the right to draw water from said flume for other purposes expressed in an indenture" of that date. In the indenture H. covenanted that S., his heirs and assigns, "shall have at all times a right to draw water from said flume for his saw-mill or for any other purpose except a grist-mill, nor to the injury of said H., his heirs or assigns in the manufacture of woolen or cotton into cloth and grain into meal or flour." *Held*, that the character of the use conveyed to H. was thereby limited, and not the quantity, and that the defendant, claiming under H., could not use the water to operate a pulp mill.

2. Further, that the plaintiff, holding under deed from S. which expressly excepted the rights conveyed to H., but conveyed all the rights of S. in the premises, would, upon non-user by H. for the specified purpose, become entitled to the entire use of the water, and might maintain an action against the grantee of H. who used the water for a different purpose.

3 Defendant is liable in this action for damages for the diversion of this water while he operated the mill jointly with another, while; he being the owner, it was operated by another under lease from him, and while, having conveyed it, he operated it under lease from the owner.

4. The plaintiff is not estopped from maintaining this suit because he did not, under the circumstances of this case, object while the defendant, was building his mill and putting in the pen-stock.

This was an action of trespass on the case for obstructing the plaintiff's flume and diverting the water therefrom; and was heard at the December Term, 1888, Tyler, J., presiding, upon the report of a referee. Judgment for the defendant, and exceptions by the plaintiff.

The following facts appeared. The water privilege in dispute is situated on Stevens river, and both parties claim the first right to draw water from a dam across that stream. The referee

reported that the defendant had in fact drawn substantially all the water for the six years next before the date of the plaintiff's writ, and had so conducted that the plaintiff, if he had the first right to the water, should recover his actual damages for that time. The defendant was the owner of a pulp mill, in the operation of which this water was used. There had originally stood upon the site of his mill a grist mill, which was taken down in 1834, and the Herron factory built in its place. This factory was used for the manufacture of cloth until about 1869 or 1870, when it was burned. In 1881 the defendant's pulp mill was erected, a penstock laid from the dam to it, and the water used in the operation in the same manner that it had been used in the operation of the factory.

The plaintiff's shop was built upon the other side of the stream in 1843, and was also connected with the dam by a penstock. So long as the Herron factory was in operation, the plaintiff only claimed to use the surplus water. After this factory was destroyed, he drew whatever water was needed in the operation of his shop, and when the defendant's mill was built he still claimed the first right to the water, for the reason that, under their respective conveyances, the owner of the factory site had a paramount right to the water only for the purpose of operating a factory or grist-mill. With reference to the conveyances, the referee reported :

" Both parties claim to derive title from one Henry Stevens, who was the owner of all the water privilege and land, which includes the falls, and is the common grantor. January 9th, 1833, Stevens conveyed to John Herron certain land below the dam and not including the dam or river. After a full description of the premises which cover the old grist-mill and factory site, follows : 'For the express purpose of erecting a grist-mill and a woolen or cotton factory, with a right to draw from said flume and dam sufficient water to be used for the purpose of manufacturing grain into meal or flour; also to draw water for the purpose of manufacturing wool or cotton into cloth, and for those purposes only, and the said Henry Stevens reserves to

himself, his heirs and assigns the right to draw water 'from said flume for other purposes expressed in an indenture this day entered into by and between said Herron and Stevens.' In the indenture referred to said Herron covenants as follows : 'I, the said John Herron, for myself, my heirs, executors, administrators and assigns, covenant and agree with the said Henry Stevens, his heirs, executors, administrators and assigns, shall have, at all times, a right to draw water from said flume for his saw-mill, or for any other purpose except a grist mill, nor to the injury of said John Herron, his heirs or assigns, in the manufacture of woolen or cotton into cloth and grain into meal or flour." In relation to this deed and indenture, the construction of which may determine the rights of the parties, the plaintiff claims that they operate as a grant of the water for the purposes' named only. The defendant claims that the words used are merely descriptive of the quantity of the water conveyed, and not restrictive of the purposes for which it may be used. This is a question of construction for the court. Defendant further claims that if the deed operates as a limitation of the use the limitation is released by deed from Stevens, dated April 1st, 1835. Said deed is of later date and record than the deed from Stevens and wife, from which plaintiff acquires his title. I refer to said deed, and the effect of it is to be construed by the court. January 31st, 1835, Henry Stevens and wife conveyed in mortgage to one Henry Hubbard all the land between the turnpike and meadow, including the dam and water privileges therein, " excepting and reserving a piece or parcel of land by me heretofore conveyed to John Herron, with water privileges for a factory or grist-mill only." Nov. 6th, 1852, said Stevens and wife conveyed the same premises in mortgage to the Connecticut River Savings Bank. On the same day Henry Hubbard conveyed same premises conveyed to him by mortgage, as above stated, by quit-claim deed, to Henry Stevens. Said quit-claim deed appears to have been received for record and recorded later than the mortgage deed to Savings Bank. August 20, 1858, Henry Stevens and wife conveyed all their

equity of redemption in the water privilege, etc., only excepting the Herron right to Salem Town Russell. May 2, 1859, Russell and wife conveyed same premises to Charles J. Anthony. At the June Term, 1861, of Caledonia County Court of Chancery, the Connecticut River Savings Bank obtained a decree of foreclosure against Stevens and wife, Charles J. Anthony, Peter C. Anthony, Henry Day, George Codling, Robert Codling and the Cherry Valley. Bank of their mortgage dated Nov. 6, 1852. Henry Day, before the day of redemption named in the decree expired, paid the amount therein named to Robert Harvey, to whom said bank had assigned all their interest March 15, 1862. December Term, 1863, of Caledonia County Court of Chancery said Day obtained a decree of foreclosure against all the parties named as defendants in the former decree, alleging said former decree and his redemption thereof, said decree became absolute. April 15, 1864, Henry Day and wife executed to J. D. Abbott a power of attorney to convey any land in Barnet. May 5, 1864, said Day and wife, by said Abbott, conveyed by warranty deed to the plaintiff a piece of land on which plaintiff's shop is located, " with the right to use and control the water in said dam, always excepting the rights and privileges belonging to the Gleason factory, meaning to convey all the rights and privileges of said dam, except as aforesaid. The property described in said deed was sold at auction and plaintiff paid therefor the sum of one hundred dollars and fifty cents. This conveyance and the prior deeds and decrees gave plaintiff all and the same rights, so far as the matters in controversy are concerned, as the Connecticut River Savings Bank had under their mortgage deed from Stevens and wife. Defendant Gould had the same title and same rights that were conveyed by Stevens and wife to Herron. Defendant has no water rights except the Herron right unless he acquires other rights through deeds, Caledonia County Mfg. Co. to Robert Harvey and same to Robert Harvey, deceased."

The defendant insisted that the plaintiff was estopped from setting up his claim in this suit by his conduct. In reference to this the referee reported :

Clement v. Gould.

" The defendant claims that plaintiff is estopped from recovering by reason of his conduct. Plaintiff had leased the shop to one Hardy and was somewhere in the West when the pulp-mill was built, but he heard at some time that the factory was being built, but the mill was completed and the old penstock in when he returned from the West, and the defendant had been to an expense of about forty-five hundred dollars, aside from the sum which he paid for water privilege. Expense has since been made, by way of repairs and putting in new machinery, of which plaintiff has had knowledge. Plaintiff never notified the defendant that he claimed all the water, nor made objections to him concerning his use of the water until a few days before this suit was brought.

" Defendant knew of the water running to plaintiff's shop, and knew that he had and claimed some rights in the water, but never inquired of the plaintiff what rights he claimed, nor did he attempt in any manner to ascertain what those rights were."

The defendant still further claimed that he had not been so identified with the operation of this pulp-mill and the consequent diversion of the water as to be liable for the tort. On this point the referee found :

" Gould leased the shop and privilege to one Arthur Wilder, July 1st, 1881, for the period of eighteen months, and the water was all used at the pulp-mill during that period. Gould took no active part in the operation of the mill. Plaintiff claims that said lease is such an authorization of the use of the water as to make defendant liable during the term of said lease. If the court are of the opinion that defendant is liable by reason of this lease, I find the damages for that time to be, for shop and machinery, $125.50; for shop alone, $67.50; for the full value of the water privilege, $375.00; but of this period of eighteen months, from July 1st, 1881, to Jan. 1st, 1883, the plaintiff is only entitled to recover from November 22, 1881, by reason of the Statute of Limitations; this leaves a period of one year,

(37)

Clement *v.* Gould.

one month and nine days, and the damage for this time is, to shop and machinery, $82.98 ; to shop .alone, $49.78 ; for full value of water privilege, $276.45.

"At the expiration of the lease to Wilder, Gould conveyed the property to Wilder, in accordance with the provision of the lease, and there is no other period for which it is claimed that defendant is liable except six months in 1883, when he operated the mill under lease from Wilder.

"I find the damage for that time, for shop and machinery, $37.50 ; for shop alone, $27.50 ; for whole use of water, $125.00. Plaintiff claims damages for the filling in of the pond and decay of his flume, by reason of the water being shut out. I find that the plaintiff has been damaged in this respect $100, but the plaintiff with care might have prevented a great part of that damage. I do not think him entitled to recover of the defendant more than $25, if he is entitled to recover for all the damage of the defendant. The damage had mostly accrued prior to 1883, and if plaintiff is entitled to recover the proportionate damages —if the term of the Wilder lease is included it is $18 ; not including the Wilder lease, $14."

*Smith & Sloane,* for the plaintiff.

The defendant has diverted the water from the plaintiff's flume. If the plaintiff had a right to use the water so diverted he can maintain this action. Gould on Waters, par. 377, and cases cited in note ; *Davis* v. *Fuller,* 12 Vt. 178 ; *Dyson* v. *Collick,* 5 B. & Ald. 600 ; *Barnstable* v. *Thatcher et al.,* 3 Met. 242 ; Addison on Torts, par. 98.

The defendant derives title from Stevens through Herron. He has no greater right than Herron had under his grant from Stevens. That was to use the water for a particular purpose, and it could be used for no other purpose. Wash. Eas. 4th ed. pp. 305–6 ; *Emerson* v. *Mooney,* 50 N. H. 319 ; Gould on Waters, par. 299 and 305 ; Angel Wat. par. 141, 144 ; *Jamaica Road Aq. Co.* v. *Chandler et al.,* 9 Allen, 164–5 ; Gould on Waters, par. 320 ; *Strong et al.* v. *Benedict et al.,* 5 Conn.

210, 219, 220-1-2 ; *De Witt* v. *Harvey et al.*, 4 Gray, 487-9 ; *Ashley* v. *Pease*, 18 Pick. 273-4 and 276 ; *French* v. *Martin*, 24 N. H. 449.

Defendant is liable for damages while he was receiving rent for the use of this water under the lease to Wilder. Angell Wat. par. 402 ; *Eastman* v. *Amoskeag Mfg. Co.* 44 N. H. 143 ; Gould on Waters, par. 388 ; *Prentiss* v. *Wood*, 132 Mass. 486, 488 ; *Curtise* v. *Thompson*, 19 N. H. 471, 478.

*Bates & May*, for the defendant.

The deed to Herron did not limit the use but the quantity. *Rogers* v. *Bancroft*, 20 Vt. 257 ; *Adams* v. *Warner*, 23 Vt. 396 ; *Dewey* v. *Williams*, 40 N. H. 222 ; s. c. 77 Am. Dec. 708 ; *Dow* v. *Edes*, 58 N. H. 193.

The deed under which the plaintiff claims did not convey the Herron water rights, but on the contrary expressly excepted them. If, therefore, there was a forfeiture of the grant to Herron for non-user, it would enure to the original grantor, and could only be taken advantage of by him. 2 Wash. Real Property, p. 11 ; *Castleton* v. *Langdon*, 19 Vt. 210 ; s. c. 7 Rep. 532 ; *Rawson* v. *School District*, 7 Allen, 125 ; 45 Me. 359 ; 79 Me. 250 ; 104 Mass. 8 ; *Dewey* v. *Williams*, 44 N. H. 222 77 Am. Dec. 708 ; Iszard Water Power Company, 34 N. J. Eq. 511.

The opinion of the court was delivered by

TAFT, J. The report shows that the plaintiff owns the water rights in question, subject to those conveyed by Stevens to Herron in 1833, and that the title to the Herron rights is now in the defendant, unless such rights are affected by the deed from Stevens to Gleason in April, 1835. After the conveyance from Stevens to Herron, the former owned the right to use the water in the stream for any purpose except that of a grist-mill, but not to the injury of Herron, nor his assigns, in the manufacture of cotton or woolen cloth or meal and flour from grain.

31 January, 1835, Stevens conveyed his then rights in the water to Henry Hubbard, by mortgage deed containing the usual covenants. On the first day of April, 1835, Stevens quit-claimed all his interest in such water rights to William Gleason. It does not appear what became of the rights, if any, so conveyed to Gleason; the defendant does not connect his title with them. In November, 1852, Hubbard conveyed by quit-claim deed to Stevens the premises Stevens mortgaged to him in January, 1835. The report shows that the plaintiff has been in adverse possession long enough to gain a perfect title to all the rights of Stevens after his conveyance to Herron. Whether the plaintiff can recover depends upon the construction of the deed from Stevens to Herron and the indenture simultaneously executed. Was the use of the water limited to the uses specified? We hold that it was. The quantity of water conveyed is described as sufficient to run a grist-mill and a cotton or woolen factory; not a grist-mill with so many run of stone, nor a factory with so many looms, thus limiting the quantity of water; the quantity is limited only by the capacity of the mill and factory; all the water could be drawn if required for those purposes. If it was not the intent to limit the use, it was needless to add anything to the clause giving Herron the right to draw water for the purposes specified, but wishing to limit the use, the parties added, after stating the purposes for which the water could be used, the words "and for those purposes only." These words clearly express that it was the use, not the quantity that was being limited. Again, in defining the rights of Stevens, the indenture provides that he may draw water for any purpose except a grist-mill, but not to the injury of said Herron, his heirs or assigns, in the manufacture of woolen or cotton into cloth or grain into meal or flour. All the water can be drawn from Herron, for any purpose save a grist-mill, unless Herron uses it for the purposes specified in the grant to him. The words of the grant are not ambiguous, the use of the water was limited to the purposes named, and the plaintiff is entitled to recover.

Clement *v.* Gould.

The defendant did not rely upon any act of the plaintiff nor upon his omission to do anything that the law required him to do; he used the water, claiming it under the Herron grant. There is no element of an estoppel in the case.

The plaintiff can recover against one wrong-doer, although others may be liable; and the defendant is liable in respect to such time as he diverted the water, alone or jointly with others, under a lease from others, and by others diverted, under a lease from him.

The plaintiff is entitled to a judgment for such damages as he has suffered by reason of the diversion of the water from his shop, flume and pond, and the referee finds them to have been the following sums, viz.: $49.78, $22.50 and $18.00, being in the whole $90.28 with interest since 4th December, 1888.

*Judgment reversed and judgment for the plaintiff.*