## W. H. BEDELL v. ARTHUR WILDER.

GENERAL TERM, 1892.

*Mistake of facts avoids contract. Lessee not bound to examine record. Voluntary payment. Parol evidence.*

1. A contract entered into under a mutual mistake as to the subject matter which induces the contract will be inoperative.

2. The defendant leased the plaintiff a water power to be used in grinding pulp. In fact there was a limitation upon the title of the lessor which prevented the use of the water for that purpose. *Held*, that the plaintiff's agreement to pay rent was inoperative, although by an examination of the defendant's record title he could have ascertained the limitation, and that money paid as rent could be recovered.

3. Parol evidence was admissible to show the purpose for which the water power was leased. Such evidence did not vary the lease.

4. The fact that the plaintiff did not actually pay the rent until after receiving notice that such a limitation was claimed, would not defeat his right of recovery if the defendant still insisted that the rent was due him and fairly gave the plaintiff to understand that he would repay it, in case it turned out that he was not entitled to it under the lease.

Assumpsit. Plea, the general issue. ·Heard at the December term, 1891, Caledonia county, START, J., presiding, upon the report of a referee and exceptions of the plaintiff thereto. The court overruled the exceptions and gave judgment for the plaintiff in the sum of $148.50 and interest. The defendant excepts.

In January, 1883, the defendant purchased an old factory site in the town of Barnet, being the premises in question, and upon the same date leased it to Statira Bancroft and J.

D. Gould. Subsequently Gould and Bancroft assigned their interest in said lease to one Conant and the plaintiff, and Conant, still later, assigned his interest to the plaintiff. Under these assignments the plaintiff occupied the premises until September, 1884.

At the time the premises were originally leased by the defendant, there was standing upon them a building erected and partially equipped for the manufacture of pulp, and the plaintiff had constructed a pen-stock from the water power to this mill. The premises were leased with the understanding and expectation upon the part of both parties that they were to be used for the manufacture of pulp, and the plaintiff took his assignment of the lease upon the same understanding and expectation, and in point of fact the premises were only used for that purpose, and could only be used for that purpose in the condition they then were.

The evidence from which the master found the understanding upon which the premises were leased, and that the mill could only be used for the manufacture of pulp, was parol evidence, and was received subject to the objection and exception of the defendant.

Before the plaintiff paid the defendant any rent under said lease, one Clement notified him that he claimed the right to use said water and should require him to pay for the use of the same. Upon receiving this notice from Clement the plaintiff reported to the defendant what the claim of Clement was. The defendant insisted that the claim was not a valid one ; that the rent belonged to him and must be paid to him by the plaintiff. As to just what was said between the plaintiff and defendant in consequence of Clement's claim, the master reported as follows :

" I do not find this claim established by the evidence. I find that the facts are that Wilder told Bedell that he should look to him for the rent, and should expect him to fulfill his part of the contract, and he should his, that whatever his contract called upon him to do, he should do, and if it called

upon him to stand between him and the Clements he should do so ; that he must go on and pay the rent to him and fulfill the contract on his part.

" Wilder knew that Bedell was using the mill for the manufacture of pulp, and expected him to control and use it for that purpose.

" Wilder further told Bedell that if his contract required him to pay what he paid Clement he should do so. He also claimed to Bedell that the Clements had no right to the water.

"Plaintiff claims that after he paid Clement, Wilder promised to fix the matter up with him. I do not find any absolute promise upon the part of Wilder to pay Bedell what he paid Clement, but that the talk in regard to fixing up was dependent upon his liability under his lease. I find that Wilder recognized Bedell as a lessee, and received rent of him as a lessee, and that he did agree that if his lease made him liable to any one as a lessor, he was liable to him, and would pay him what he paid Clement."

As a result of what was said the plaintiff paid the defendant by way of rent $148.50, that being the amount due under the lease for the full time during which the plaintiff kept the premises.

It was subsequently determined by a decision of the supreme court, *Clement* v. *Gould*, 61 Vt. 563, that the water could not be used for the manufacture of pulp, and in consequence of that decision the plaintiff was compelled to pay Clement also for the use of the water during this same period. This suit was brought to recover the $148.50 which he had paid the defendant.

The deed affixing the limitation to the use of the water was upon record, but neither party had any knowledge of it when the original lease was made by the defendant or when the assignment was made to the plaintiff.

*W. P. Stafford* for the defendant.

Under the finding of the referee the defendant is only liable

in case his lease binds him to pay the plaintiff the amount of this rent.

*Smith & Sloane* for the plaintiff.

The defendant had no right to lease the water power for the grinding of pulp. Hence the consideration for the contract of lease has entirely failed and the plaintiff is entitled to recover back whatever he has paid under it. *Newsome* v. *Graham*, 21 E. C. L. 63; *Barber* v. *Brown* 1 C. B. 121; *Labanon* v. *Heath*, 47 N. H. 353; *Cragin* v. *Fowler et al.*, 34 Vt. 326; *Hudson* v. *Robinson*, 4 M. & S. 478; *James* v. *Hodsden*, 47 Vt. 127.

TAFT, J. When the lease in question was executed by the defendant, and when the plaintiff took the assignment of it, the parties to both instruments understood that the water power which was the subject of the lease could be used in manufacturing pulp. With this understanding, the lease and assignment were made, and without it, it is apparent that no lease nor assignment would have been executed. The water could not be used for such purpose. *Clement* v. *Gould*, 61 Vt. 573. The lease was made and assigned in ignorance of this fact; an instance of a mistake as to the subject matter of the thing contracted for, a common mistake as to the rights conveyed by the lease. It is clear that the defendant supposed he was selling and the plaintiff that he was buying a right to water which could be used in making pulp. The plaintiff secured by the contracts no such rights, for the defendant had none to convey. It is analogous in principle to those cases of sale in which the subject of the sale has ceased to exist, and the parties are ignorant of the fact, like the destruction of a building by fire before the sale, or the death of an animal, or the sale of an annuity when the annuitant is dead. An error of fact takes place

when some fact is supposed to exist which does not exist. The parties in entering into the contracts in question, supposed the water could be used by them in making pulp; it could not be so used. Clearly an error of fact. In respect of such a state of facts the law is this: If an agreement is induced by a mistake common to both parties, without which mistake the agreement would not have been made, and the mistake was in respect of the subject matter of .the contract, the agreement is inoperative and void. Such was the civil law. Domat's Civil Law, Pt. 1, Book 1, Title XVIII, s. 1, Art VII. The same rule has been adopted as a part of the common law, and is based upon the idea that in such cases no contract has been consummated, that the minds of the parties have never met in respect of the real subject matter of the contract. It is not a case of a mere failure of consideration, for that implies the existence of a contract, while a mutual mistake prevents the existence of one.

The law in this state in such cases was announced in *Ketchum* v. *Catlin*, 21 Vt. 191. The defendant sold produce which both parties supposed was in Whitehall; in fact it was in Boston. By reason of this mutual mistake, the plaintiff was permitted to recover what he had paid defendant on account of it, and that vigorous master of the common law, the late Bennett, J., says, "if a contract is made in mutual error of material facts which have induced the contract, it is invalid and may be set aside. This is upon the principle, mainly, that when the parties are under a mutual mistake as to material facts, affecting the subject matter of the contract, there is a want of a binding assent; and we think a contract so made may be avoided in a court of law." And see *Kelley* v. *Solari*, 9 M. & W. 59; *Wheadon* v. *Olds*, 20 Wend. 174; *Fleetwood* v. *Brown*, 109 Ind. 567; *Newell* v. *Smith*, 53 Conn. 72, in which case a compromise was set aside for that the parties mutually supposed a cow was

not in calf, when in fact she was. The effect of a mistake, when it has any operation at all, is to avoid the contract, and if the contract is avoided, an action lies to recover money paid under it.

The parol evidence was properly admitted not to vary the terms nor the effect of the contract, but to show that it never took effect as a valid agreement. The claim was not based upon the lease, but upon a fact back of it, the mutual mistake of the parties, which led to the execution of it and the assignment. The plaintiff is not estopped from asserting this claim against the defendant. It is true he had constructive notice of the limitation upon the water rights, as the deed limiting them was upon record; but the defendant had taken the water to the pulp mill and had leased it in connection with the mill, and the plaintiff might well infer, without actual notice, that there was no limit nor restriction upon the water rights.

The mistake was discovered before the payment, which the plaintiff is seeking to recover, was made. After it was discovered that Clement made claim to the water rights, the defendant insisted that he, Clement, had no title to the water and that the plaintiff must pay him, the defendant, the rent, and the effect of the report is that he did agree that if in respect of the lease he was liable to any one, it was to the plaintiff, and that he would pay him what he was compelled to pay Clement.

We do not think a technical, narrow construction should be given to the terms of the defendant's agreement. He promised the plaintiff that he would pay " if his lease made him liable ": he would do " whatever his contract called upon him to do." It is true he cannot be made liable in an action upon the lease, but he is liable in respect of it, and the lease being inoperative and void, the law calls upon him to refund whatever he has received upon it. The agreement although conditional has become absolute, the plaintiff is entitled to

its performance, and the defendant should " pay him what he paid Clement," and thus " stand between him and all harm " as he agreed to do.

*Judgment affirmed.*