## CITY POWER CO. vs. FERGUS FALLS WATER CO.

Argued Oct. 17, 1893.   Reversed Nov. 8, 1893.

No. 8428.

**A lease of water power construed.**

Certain provisions in a lease of water power and contract to furnish water, construed.

**Landlord liable to tenant for infringement done with his aid and consent.**

It is no defense to a tenant's claim that his rights under a lease have been invaded and infringed upon, to say that the invasion and infringement were the acts of another tenant, when they have been performed with the landlord's consent and active concurrence.

Appeal by defendant, the Fergus Falls Water Company, from an order of the District Court of Otter Tail County, *L. L. Baxter, J.,* made August 29, 1893, denying its motion for a new trial.

The plaintiff, the City Power Company, is a corporation and owns a dam across the Red River at Fergus Falls and the waterpower on that river created thereby. The defendant is also a corporation engaged in supplying the City and its inhabitants with water through pipes laid beneath the streets. It operates its works and maintains a pressure in its pipes by pumps propelled by water-power which it leased from the former owner, the grantor of the City Power Co. This action was brought January 5, 1893, to recover $1,490.15 rent past due and unpaid. The defendant the Water Co. answered and for counterclaim alleged that plaintiff and its other tenants had infringed upon defendant's rights under its lease and obstructed and diminished the supply of water to which it was entitled so that it was compelled to purchase and put in a steam engine to run its works to its damage $5,000, and it prayed judgment against plaintiff for the balance, $3,509.85. A jury was waived and the issues were tried July 18, 1893. Findings of fact were filed and judgment ordered for the plaintiff for the amount of its claim with interest. The Water Co. moved for a new trial, but was refused and it appeals. The facts were not in dispute. The sole question was upon the construction of the lease; whether by it the right to supply

to Kirk, another tenant, waterpower for his flouring mill was paramount to the right of the defendant to water power to run its plant.

*Mason & Hilton,* for appellant.

*W. E. Dodge,* for respondent.

COLLINS, J.   To dispose of this appeal, which is from an order denying defendant's motion for a new trial in an action brought to recover an amount alleged to be due as rent under the terms and conditions of a certain written lease, we have simply to consider and construe a portion of the instrument, there being no controversy over the facts.   The lease was executed between plaintiff's predecessor in interest and this defendant on August 1, 1883, and demised to the latter for a period of years a lot of land embraced in a mill reserve and site, the right to lay and maintain certain water mains, the right to construct and maintain on a specified tract of land above the mill dam, "and extending into the river a sufficient distance to take therefrom water for power and other purposes hereinafter leased and permitted to be taken," necessary head works and head gates for the purpose of receiving and controlling the water to be taken, used, and received by defendant.   It was stipulated that "said head works and head gates are, however, to be so constructed, erected, and maintained as not in any way to affect the permanence or stability of the so-called 'Austin Dam,' now erected across the river mentioned heretofore, *or to hinder or prevent the free and uninterrupted use of the water through the flumes and bulkheads already built,* or through any flumes or bulkheads that may hereafter be made."   Provision was also made for the construction and maintenance by defendant of flumes, waste gates, and a tailrace, and it was then agreed that the latter should have the right "to draw from the mill pond above said so-called 'Austin Dam' a sufficient quantity of water to supply through the waterworks" of this defendant "the demands, requirements, and necessities of the city of Fergus Falls, and the inhabitants of said city and vicinity: provided, however, that the water so drawn at any one time shall not exceed in quantity the equivalent of the amount which a one hundred horse power can pump."   The lease also granted to defendant sufficient water power "from above the dam to propel

and operate its waterworks, * * * but not, however, to an amount to exceed one hundred horse power, as measured and calculated upon water wheels of approved pattern." It appears that when this lease was executed there was a mill, owned by the lessor, and in operation, upon this water power, and in connection and for use therewith flumes and bulkheads had been constructed. Some two years later the lessor sold this mill to one Kirk, and at the same time entered into a contract with him to furnish to him, and by means of the flumes and bulkheads referred to in its lease to defendant as already built, sufficient water power to run and operate the mill. Defendant was then in possession of the premises, power, and privileges mentioned in its lease. Kirk took possession of the mill, and has since run and operated it, using the water power contracted for. By reason of this defendant has been deprived of the quantity of water and the amount of power it contends it was entitled to, under the terms of the lease, during the period of time for which plaintiff attempted to recover rent. Certain it is that if the defendant was entitled to any specified quantity of water under its lease, without regard to what might be needed for the use and operation of the Kirk mill, it was not available, and could not be had, because of such use and operation.

Counsel for plaintiff contends very ably and zealously that by reason of the words which we have italicised in one of the foregoing quotations from the lease there was reserved and excepted from the grant to defendant such water and water power as was or would thereafter be necessary to use in the operation of the mill then being supplied by means of the flumes and bulkheads already built. In other words, he contends that defendant's right to use any water, to have any water power, was wholly subordinated to the needs and necessities of the existing mill, notwithstanding its absolute and unconditional agreement found in the lease to pay a fixed annual rental, not at all dependent upon what it might receive, for the ensuing thirty years. A construction which would work an injustice of that magnitude should not obtain, unless the terms and conditions of a contract through which it is sought are clear and unmistakable. In our judgment, there is no room for any such construction of the one now before us; nor do we understand that the learned trial court so held. Authority was conferred upon defendant to extend its works

into the mill pond such distance as might be necessary for the proper reception of the water supply, and there to construct and maintain such essential adjuncts as head works and head gates, all to be constructed and maintained so that they would not affect the performance or stability of the mill dam, or hinder or prevent the free and uninterrupted use of water through the existing flumes and bulkheads. Again, those works and adjuncts were to be so constructed and maintained that they should not hinder or prevent the free and uninterrupted use of water through the flumes and bulkheads to be put in at some future time, undoubtedly for the purpose of supplying other mills which might be erected at or below the dam. The construction claimed would not only allow the defendant to be deprived of such water as it might need and had agreed to pay for, if it was necessary for the proper operation of the Kirk mill, but would permit other mills to be supplied with water through newly-built flumes and bulkheads, at the lessor's pleasure, and in total disregard of the lessee,—a most absurd result. In this connection we may say that the argument of counsel that the language in the lease providing for such flumes and bulkheads to be subsequently erected only referred to repairs upon, or the rebuilding of, those already in, is without merit, for the words used are unambiguous, and their meaning is plain. Another absurdity would follow should we adopt the views of plaintiff's counsel. The defendant was to take its water from above the dam, and, of course, from above the existing or contemplated flumes and bulkheads. If it took any at all, when there was no overflow at the dam, it would necessarily hinder and prevent such as it took from passing through flumes and bulkheads below. This, of itself, if plaintiff is right in its contention, would invade its rights to have the free and uninterrupted use or flow of the water through said flumes and bulkheads. Evidently these clauses were inserted for the purpose of preventing the lessee from constructing its head works and head gates so as to cut off and render worthless the flumes and bulkheads then in, and also to prevent such construction and maintenance as would effectually stop further improvement of the power. It is not claimed by plaintiff that this provision has been violated by defendant. The parties may not have had in mind a deficiency of water when entering into the contract, but neither can now be aided by a forced and unnatural

construction of the same. Had it been intended that defendant's right to water should be made secondary to the claims of those engaged in running the Kirk mill, and that the latter should first be served, that intent could easily have been expressed, and made a part of the agreement. This was not done, and, letting the contract speak for itself, we cannot evade the conclusion that defendant was to have precedence in the water supply, not to exceed the quantity mentioned, and also not to exceed the horse power specified.

There is nothing in the point that because the natural flow of the water in the stream was interfered with by another mill situated above plaintiff's dam and water power, the latter should be permitted to recover, for in the case as presented it is evident that defendant's failure to secure the quantity of water and the power mentioned in the lease was due to an insufficiency of water and power for both defendant and Kirk, not to an insufficiency when the former only was being supplied. We need not discuss at length the suggestion that Kirk was liable to defendant instead of plaintiff, and hence the former cannot resist the payment of rent. It is no defense to a tenant's claim that his rights under the lease have been invaded and infringed upon, to say that the invasion and infringement were the acts of another tenant, when they have been performed with the landlord's consent and active concurrence. *Twiss* v. *Baldwin,* 9 Conn. 291; *Clement* v. *Gould,* 61 Vt. 573, (18 Atl. Rep. 453.) See, also, *Collins* v. *Lewis,* 53 Minn. 78, (54 N. W. Rep. 1056.)

Order reversed.

(Opinion published 56 N. W. Rep. 685.)

---

ON APPLICATION FOR REARGUMENT.

Denied Nov. 29, 1893.

PER CURIAM. Upon motion for rehearing. It is possible that upon the evidence this court was not fully justified in asserting, as it did in the opinion, that defendant's failure to obtain the quantity of water and all of the power granted to it by the lease was due to an insufficiency for both Kirk and itself. But in the fourth subdivision

of the reply plaintiff admits the leasing of power and water to Kirk, alleges that he has entered into possession of the same, and "has since continued to operate, control, and use the same." Again, in the same subdivision, it is alleged that the quantity of water used by Kirk under his lease is the same, and not in excess of the quantity excepted and reserved from the grant to defendant. The theory of the entire reply to the counterclaim is that Kirk was entitled to use the water and power leased to him at all events, and in disregard of defendant's lease; not that for a time he failed or omitted to use any water whatsoever, and hence that he did not interfere with defendant. As we construe the reply, the point raised by Kirk's testimony that he did not use any water in the winter of 1889–90 was not in issue; and from the entire record, including the "note" of the trial judge, it seems plain that it was taken for granted upon the trial that the defendant's supply was reduced below the amount it was entitled to have by the use of water at Kirk's mill. For these reasons, if for none other, the motion must be denied.

(Opinion published 56 N. W. Rep. 1006.)