No. 9861.

## HUNT v. BLANTON ET AL.

VENDOR AND VENDEE.—*Fraud.—Contract.—Rescission.*—An offer to rescind a purchase of land for fraud, made five months after the conveyance, without any reason for the delay, comes too late.

SAME.—*Fraudulent Representations.—Damages.*— One who is induced by fraudulent representations as to its character to purchase lands at a price above its value may recover damages without rescinding the contract.

SAME.—*Complaint.—Evidence.—Variance.*—A complaint by a purchaser of lands against the vendor alleged fraud, in that the defendant, for the purpose of deceiving, procured a guide to exhibit to the plaintiffs other lands, of greater value, as the lands sought to be inspected. The court found, and the evidence proved, that the plaintiffs and defendant were equally misled by the guide, without the knowledge or wish of the defendant, who merely paid the guide for his services.

*Held,* that this did not sustain the complaint.

SPECIAL FINDING.—*Exception.—New Trial.—Practice.*—An exception to conclusions of law questions only the correctness of the law as to the facts found, the facts being taken as correctly and fully found. The questions as to whether the findings are sustained by the evidence or are contrary to law are presented only by a motion for a new trial.

SAME.—*Facts Not Found.*—Where a special finding leaves an issue undetermined, that issue is regarded as not proved by the party having the burden of proof.

From the Hendricks Circuit Court.

*J. V. Hadley, E. G. Hogate* and *R. B. Blake,* for appellant.
*C. C. Nave,* for appellees.

BICKNELL, C. C.—The appellees complained of the appellant, alleging that he owed them $800, a balance due on a sale of land, and proposed in payment thereof to convey to them 80 acres of land in Morgan county, and, for the purpose of effecting said trade, falsely and fraudulently represented to them that said 80 acres were well set with oak trees and other valuable timber; that thereupon one of the plaintiffs went with the defendant to Morgan county to examine the land, which consisted of two 40 acre tracts; that when they reached Morgan county the defendant, with the intention and purpose aforesaid, procured one Herschel Lewis to go with them and point out and show said 40 acre tracts, and, for the purpose and with the intention aforesaid, said Lewis and defendant showed said plaintiff two 40 acre tracts well set with valuable oak and other valuable timber, and worth $800; that said plaintiffs, relying on said statements of said defendant and said Lewis, and believing that the land so proposed to be sold was the land so pointed out, and not knowing the falsity of said statements, took said land in payment of said $800, and received a conveyance therefor, made by one Parker and his wife, dated March 30th, 1880; that, in fact, the land so proposed to be conveyed, and which was embraced in said deed, was not the land pointed out and shown as aforesaid, and was without timber and was of very little value, all which was concealed and not known to the plaintiffs until after they had received said deed and had gone to look after their land; that they then requested the defendant to repay them said $800, which he refused to do; that afterwards, on August 25th, 1880, said plaintiffs tendered to said Parker, in the presence of the defendants, a quitclaim deed for the land, which said Parker refused to take, and plaintiffs then again demanded of defendant said $800, which he again refused to pay. The complaint prays that said contract as to said land be declared fraudulent and void, and that plaintiffs may have judgment for said $800, and for all proper relief.

A demurrer to this complaint, for want of sufficient facts,

was overruled, and this is one of the errors assigned by the appellant.

The complaint is not sufficient for a rescission of the contract, because it does not show that the offer to rescind was made in proper time. In *Krutz* v. *Craig*, 53 Ind. 561, this court said: "She should have disaffirmed the agreement at the earliest practicable moment after the discovery of the cheat." In *Moon* v. *Baum*, 58 Ind. 194, the language is: "A party seeking to set aside * an agreement for fraud in its execution, must proceed promptly upon the discovery of the fraud." To the same effect see *DeFord* v. *Urbain*, 48 Ind. 219, 221, and *Watson, etc., Co.* v. *Casteel*, 68 Ind. 476.

In *Sieveking* v. *Litzler*, 31 Ind. 13, a delay of two months was held fatal; here five months had elapsed after the execution of the deed before the offer to rescind. If there were any circumstances which could make such delay reasonable, they ought to have been averred in the complaint. *Hunt* v. *Silk*, 5 East, 449; *Campbell* v. *Fleming*, 1 Ad. & E. 40; *Barton* v. *Simmons*, 14 Ind. 49. But the complaint contains a good cause of action for damages.

The original representation was evidently not relied on, because the plaintiffs afterwards undertook to make their own examination; but notwithstanding that, if, as the complaint alleges, the defendant fraudulently procured a confederate to point out better land as the land in negotiation, and thereby induced the plaintiffs to take the proposed land in payment of their debt, they are entitled to damages, although not within the rules as to rescission, and although the original representation was not relied on. The demurrer to the complaint was rightly overruled.

Upon a general denial pleaded there was a trial by the court, with a special finding of facts and conclusions of law as follows: "The plaintiffs owned land in Hendricks county, Indiana, and in January, 1880, were anxious to sell it, and the defendant had at the time a mortgage on the same for about $500; defendant heard that plaintiffs were desirous of sell-

ing, and invited them to his office in Danville, where he carried on a real estate and loan broker's business. At the office defendant proposed to take the plaintiffs' land if they would accept as part payment, or as an exchange, some land owned by him in Morgan county, Indiana, which was represented to be 80 acres of timbered land, and valuable mainly for the timber upon it.

" It was agreed between the defendant and Hamilton W. Blanton, one of the plaintiffs, that they should meet near the land in Morgan county in a few days and examine it together, the defendant informing the said plaintiff that he had never seen the land himself, and did not know its exact character, though he showed said plaintiff its location on a map in his office. Some days afterwards the defendant and said plaintiff did meet near the Morgan county land and started on foot to inspect it, neither of them knowing its exact boundaries. On the way they met a stranger, who professed to be familiar with the country about the land, and said he had worked on adjoining land, that his father had once talked of buying the land then owned by defendant, and that he could point it out. The defendant paid him fifty cents to guide them to the land, and the three started to examine it. The land, as well as that about it, was broken and hilly and almost wholly unimproved, so that there were no fences or other landmarks to guide them in forming opinions as to its boundaries. On some of the land adjoining on the east and west most of the timber had been cut off, and those who had done so had, as the guide informed the men with him, endeavored to cut about to the line of defendant's land ; that he had been one of those who helped cut off the timber ; as they approached the defendant's land from the east the guide pointed out the east line, as being at or very near the line where the valuable timber had been left standing, and he further informed the men that they entered the land of the defendant on the east side and near the northeast corner ; that the land lay west and south and possibly a little north, but he was not certain of that. No exact boundaries

were pointed out or enquired for, and the party pursued a southwesterly course through the woods and up on a high dividing ridge of land, until they came to a point which the guide said was near the southern boundary of the defendant's land. Still further to the south the land was well timbered, and there was no fence or other visible line, or supposed line, dividing the land of defendant from that toward the south. The guide, after a pause here, also showed the others about where the west line of defendant's land was, it being near by, and the stopping point being very near the southwest corner of defendant's land. This west line also the guide only fixed by the fact that timber had been cut by another owner up to a certain line readily seen by all. The party then returned to the starting point and left the land, without any explanation of boundaries from any one, and without further enquiry or search than has been already indicated. Plaintiffs and defendant in a few days exchanged lands, and the Hendricks county land was conveyed to defendant for the consideration of $2,000, as expressed in the deed, and the defendant's Morgan county land was conveyed to plaintiffs for the expressed consideration of $800, and defendant paid plaintiffs $1,200 in cash as the difference between the two tracts of land, and the defendant still retains the Hendricks county land, and the plaintiffs still retain the $1,200 in cash.

"In the following spring, about June, 1880, when plaintiffs prepared to cut the timber from the Morgan county land obtained from defendant, it was discovered that defendant had in fact owned and did in fact convey to the plaintiffs 80 acres of unimproved land in Morgan county, but the fact was found to be that the guide who had showed them the land in January had in fact taken them upon it about four rods south of the middle of the east line of defendant's land; that said land lay in a right-angled tract, twice as long as it was wide, and longest from north to south, and that all of the land shown to said Hamilton Blanton was the south half of said tract, stopping very near the south line, the route pursued having

been crooked and through woods and brush; that the part of said tract over which he was conducted, as well as the tract adjoining it on the south, was well set with valuable timber, but the north half of said tract, which was not shown, had but little valuable timber upon it. It was cut some time before, so that nothing remained except trees of little value.

"The defendant represented to plaintiffs before selling the land, that it was timbered land, valuable for that reason principally, and also by the acts of himself and his agent, employed as a guide, induced the plaintiffs to believe that he was the owner of and was conveying to them 80 acres of well timbered land, and that the land exhibited to one of the plaintiffs was the land, and that none of it was of a different character from that exhibited, and plaintiffs did make the trade, relying upon these representations as true.

"That the defendant himself did not know the facts, or purposely mislead the plaintiffs, but that they were misled and defrauded by representations upon which they relied as herein set out.

"That the value of the 80 acres owned by defendant in Morgan county, and conveyed to plaintiffs, was and is $300, and if the entire tract had been as represented, and as the part shown to plaintiffs, it would have been worth $500.

"That the plaintiffs, before bringing this action, tendered to defendant a quitclaim deed to said Morgan county tract of land, and demanded instead $800 in cash, and the defendant refused the tender."

Upon these facts the court states the following conclusions of law, to wit:

"1. Plaintiffs can not compel defendant to receive back his Morgan county land and pay them $800 with interest.

"2. Plaintiffs had a legal right to rely upon the representations of the defendant as to the location of the land in Morgan county, and that it was all well set with valuable timber, and there was nothing in the exhibition of the land, shown as it

was, to warn them to the contrary, or to put them upon further enquiry, and they were defrauded by said representations.

"3. That the plaintiffs were damaged by the misrepresentations of the defendant, and that the measure of their damages is the difference in value between the land as represented and as it actually was."

To these conclusions of law the defendant excepted. He also moved for a new trial for the following reason :

"The special finding of facts, as made by the court, is not sustained by sufficient evidence, and is contrary to law."

This motion was overruled, judgment was rendered for the plaintiffs for $200 and costs, and the defendant appealed. He assigns errors as follows : ˙

1. The court erred in its conclusions of law.

. 2. The court erred in overruling the demurrer to the complaint.

3. The court erred in overruling the motion for a new trial.

The second of these specifications has already been considered.

Where an exception is taken to conclusions of law, the only question thereby presented is, did the court err in applying the law to the facts found ? For the purpose of determining this question, the facts are taken to be correctly and fully found. *Cruzan* ˙v. *Smith*, 41 Ind. 288.

The questions whether the findings are sustained by the evidence, or are contrary to law, are presented only by a motion for a new trial. *Schmitz* v. *Lauferty*, 29 Ind. 400.

The allegation in the complaint was that a representation was made by the defendant at Danville, that "said 80 acres were well set with oak trees and other valuable timber ;" the finding is that "defendant represented to plaintiffs, before selling the land, that it was timbered land, and valuable chiefly for the timber." There is a great difference between the representation as alleged and the representation as found. Land may be timbered land, and valuable chiefly for the timber, without being well set with oak trees, or well set with any

other timber; but this variance, perhaps, is not material, because, as we have already seen, the original representation was not relied on, and the finding shows that the plaintiffs had no right to rely upon it, because it was accompanied by the statement of the defendant, that " He had had never seen the land himself and did not know its exact character." That such a representation ought not to be relied on, see Cooley Torts, 503; *Hagee* v. *Grossman*, 31 Ind. 223; *Bowman* v. *Carithers*, 40 Ind. 90; *Port* v. *Williams*, 6 Ind. 219. Especially it is not to be relied on where the purchaser undertakes to examine the property for himself and has a reasonable opportunity for such examination. *Cagney* v. *Cuson*, 77 Ind. 494.

The only allegations in the complaint, which made it good upon the demurrer, were these: That the defendant and one of the plaintiffs went to Morgan county to look at the land, and that there the defendant, with the fraudulent intention and purpose of accomplishing the trade, procured one Herschel Lewis to go with them and show them the two 40 acre tracts, and that, for the purpose and with the intention aforesaid, said Lewis and the defendant showed said plaintiff two 40 acre tracts well set with valuable oak and other timber, and worth $800, and that said plaintiff, relying on said statements of said defendant and said Lewis, and believing that the land so pointed out was the land to be sold, and not knowing the falsity of said statements, took said land in payment of said $800; but, in fact, the land to be sold was without timber and of very little value, all of which was concealed, etc.

It is evident that this part of the complaint refers exclusively to what was said and done in Morgan county by the defendant and his alleged confederate, Lewis, who is stated to have been corruptly and fraudulently employed by defendant for the very purpose of deceiving said plaintiff. These allegations were the substance of the complaint. If they were not proved the plaintiffs could not succeed in their action.

The defendant pleaded the general denial; the burden of proof was upon the plaintiffs.

The special findings of the court do not show any such fraudulent employment of Lewis for the purpose stated in the complaint. They do not show a fraudulent employment for any purpose. On the contrary, they expressly find that "the defendant did not purposely mislead the plaintiffs;" that he had "informed the plaintiffs that he had never seen the land and did not know its exact character;" that they started on foot to examine the land, "neither of them knowing its exact boundaries;" that on the way they met a stranger, not a confederate of the defendant; that the stranger professed to be able to point out the land for them, and undertook to do so for fifty cents, which the defendant paid; that the stranger took them to the land, stating that they were entering it near the northeast corner, and that the land lay west and south, and possibly a little north, but he was not certain of that; he pointed out no exact boundaries, and none were enquired for; he said they were near the southern boundary of the land, and in fact they were very near the southwest corner of it; they then returned across the land, without any statement of boundaries, and without further enquiry or search; and upon such representations of such a stranger, without any representation whatever by the defendant, who was equally ignorant with the plaintiffs, they bought the land.

The findings further show that it was afterwards discovered that the parties had entered upon the land, not near the northeast corner, but four rods south of the middle of the east line, and that the land which "the stranger, employed as a guide," undertook to show was the south half of the defendant's land, which was well set with valuable timber; while the north half of the defendant's land had but little valuable timber. The findings are continued thus: "The defendant, by the acts of himself and his agent, employed as a guide, induced the plaintiffs to believe that the land exhibited was the land to be sold,"

etc., but the only acts of the defendant were paying the stranger fifty cents and following him to the land he pointed out. The words, "by himself and his agent, employed as a guide," do not indicate agency for any other purpose than as a guide. The substance of it is, that the parties were unable to find the land; a stranger offered to show it for fifty cents, and the defendant paid the money. Here both parties, in equal ignorance of the stranger's competency, put equal trust in him. If the defendant had produced a confederate and had represented to plaintiffs that he knew all about the land and would show it, proof of such facts would have tended to support the complaint.

The substance of the complaint, put in issue by the general denial, was that the defendant fraudulently employed his confederate, Lewis, to point out better land as the defendant's land, and that thereby the defendant deceived the plaintiffs and fraudulently induced them to buy his land. Upon this issue the special findings are silent. Where a special finding leaves an issue undetermined, that issue is regarded as not proved by the party having the burden of proof. *Graham* v. *State, ex rel.*, 66 Ind. 386; *Ex parte Walls*, 73 Ind. 95; *Talburt* v. *Berkshire L. Ins. Co.*, 80 Ind. 434; *Ayers* v. *Adams*, 82 Ind. 109.

The court erred in its second and third conclusions of law. The findings were contrary to the evidence and contrary to law. The judgment ought to be reversed and the cause should be remanded for a new trial.

PER CURIAM.—It is therefore ordered by the court, that the judgment of the court below be and it is hereby in all things reversed, at the costs of the appellees, and this cause is remanded for a new trial.

Opinion filed at the November term, 1882.

Petition for a rehearing overruled at the May term, 1883.