Manor *et al.* *v.* The Board of Commissioners of Jay County.

Filed April 5, 1894.

———————◆———————

15,937.

## MANOR ET. AL *v.* THE BOARD OF COMMISSIONERS OF JAY COUNTY.

GRAVEL ROAD.—*Re-assessment.*—*Special Term of Board of Commissioners.*—Proceedings for re-assessment of lands for gravel road purposes may be had at a special term of the board of commissioners as well as at a regular term.

SAME.—*Additional Assessment.*—*Authority of Board.*—*Jurisdiction.*— *Notice.*—The board of commissioners has authority, of its own motion and without petition, to make an additional assessment to pay the cost of the improvement, in case the original assessment proves insufficient, and where proper notice is given of the time and place where the board will hear objections to the report of the committee to re-assess and apportion the additional assessment on the lands affected, the board has jurisdiction both of the subject-matter and the parties.

Manor *et al. v.* The Board of Commissioners of Jay County.

SAME.—*Itemized Statement of Costs.*—*Motion to Make More Specific.*— *Discretion.*—*Practice.*—The overruling or the sustaining of a motion to reject an itemized statement of expenditures in the construction of a free gravel road, and to require a full and complete statement of such expenditures, rests in the sound discretion of the court, and the appellate tribunal will reverse only where there has been an abuse of such discretion prejudicial to the rights of the complaining party.

SAME.—*County Treasurer.*—*Payment of Bonds.*—*Gravel Road Fund.*— Where a county treasurer redeems gravel road bonds with money not belonging to the fund of such road, such treasurer should have an allowance therefor, which is properly chargeable against the fund of such road.

SAME.—*County Treasurer.*—*Gravel Road Tax.*—*Per Centum for Collecting.*—A county treasurer is entitled to a per centum for collecting gravel road tax, and it is collectible out of the tax collected.

SAME.—*Committee's Report.*—*Nature of.*—The report of a committee to make an apportionment in a gravel road proceeding, is in the nature of a verdict, or special finding of facts, and does not perform the office of a complaint, and objections filed thereto are in the nature of objections to a verdict or finding.

SAME.—*Apportionment of Assessment.*—*Too High.*—*Remedy.*—*Practice.* —If an apportionment made against lands is too high, it furnishes a ground for a new trial, but not for a motion to modify.

SAME.—*Items Chargeable to Gravel Road Fund.*—The items of livery hire, of prospecting for gravel, of publishing notice, and of making tax duplicate, are not chargeable to the gravel road fund.

SAME.—*Re-assessment.*—*How Made.*—*Appeal.*—*Trial De Novo.*—Where an appeal is taken from a re-assessment proceeding, the case is tried *de novo* in the circuit court, and if the necessity for a re-assessment is adjudged to exist, it is made by such court, and the former re-assessment being superseded by the appeal, the question how it was made is not material.

SPECIAL FINDING.—*Failure to Find as to a Fact in Issue.*—*Effect.*—*Burden of Proof.*—Where the court fails to make a finding on any fact in issue, such failure is equivalent to a finding against the party having the burden of the issue as to such fact.

SAME.—*Sufficiency of Evidence.*—That the finding is sustained by the evidence, see opinion.

NOTICE.—*Gravel Road.*—*Additional Assessment.*—Notice of the time and place of the meeting of the committee to make an apportionment of an additional assessment for gravel road purposes is not required.

EVIDENCE.—*Formally Introducing Part of Record of the Cause.*—There

is no error in formally introducing in evidence a paper which is a part of the record in the cause on trial.

REHEARING.—*Questions Waived.— Brief.—Supreme Court Practice.*— Questions waived by silence of appellant's brief on original hearing can not be presented to this court on a petition for a rehearing.

HARMLESS ERROR.—*Evidence.—Gravel Road.—Re-assessment.—Committee's Report.*—The admission in evidence, on appeal to the circuit court of a gravel road proceeding, of the report of the committee to apportion a re-assessment, is harmless error, if error at all.

From the Jay Circuit Court.

*J. W. Headington* and *J. J. M. La Follette,* for appellants.

*J. M. Smith, E. McGriff, C. Corwin* and *F. H. Snyder,* for appellee.

McCABE, C. J.—On the 22d day of May, 1889, the board of commissioners of Jay county, at a special session thereof, made the following order:

"HICKMAN FREE GRAVEL ROAD, ADDITIONAL ASSESSMENT.

"Whereas, the engineer's estimate for the gravel for the construction of the Hickman free gravel road was made, and the costs based on the gravel being obtained from the Hickman Pit; and

"Whereas, the gravel above referred to was condemned by the engineer in charge of said works, and by the board of commissioners of Jay county, Ind., as being insufficient in quantity and quality for the construction of said gravel road, and said engineer and board of commissioners ordered the gravel for said above named gravel road to be hauled from the pits of J. B. McKinney, thereby increasing the average haul and creating an additional expense over and above the original estimate; and

"Whereas, there was, on the 25th day of February, 1886, ten thousand (10,000) dollars of bonds issued and sold to pay said expenses; and

Manor *et al. v.* The Board of Commissioners of Jay County.

"Whereas, the committee appointed by this court, on the 12th of March, 1884, to apportion the cost of the construction of said road upon the lands as reported benefited, which report was approved and equalized by said court on the 9th day of June, 1884, and before the completion of the construction of said road. It is, therefore, considered and adjudged, and this board does find, that the assessment and apportionment heretofore made for the payment of the costs and expenses of said road is insufficient to pay said bonds and the accruing interest thereon, and costs of said road. And it is also found by this board to be necessary, in order to meet the payment of $7,693, to make an additional assessment upon all the lands as heretofore reported benefited by said road.

"It is, therefore, ordered by the board that an additional assessment of $7,693 be levied upon the lands heretofore reported as benefited by said road; and that Jonas Votaw, W. H. Harkins, and Nimrod Headington, freeholders of said county, be and they are hereby appointed a committee to apportion the additional assessment of $7,693 upon the lands heretofore reported as benefited by said road, being the actual cost of said road, and that the same be the assessment in full for said free gravel road for the year 1889.

"And it is further ordered that the said committee meet at the auditor's office, in the city of Portland, Jay county, Indiana, on the 28th day of May, 1889, at 10 o'clock A. M., and, after being duly qualified according to law, proceed to make said apportionment and report according to law."

And at another special session of said board the following order was entered of record:

"COMMISSIONERS' COURT, July 10th, 1889.

"Pursuant to notice given by publication in the Portland *Sun*, a weekly newspaper of general circulation,

Manor *et al. v.* The Board of Commissioners of Jay County.

printed and published in Portland, Jay county, Indiana, the board of commissioners of Jay county, Indiana, met in special session at the auditor's office in the city of Portland, on Wednesday, July 10, 1889, to hear and determine any and all grievances that may come before them in the matter of the Hickman free gravel road.

"Additional assessment:

"*To the Hon. Board of Commissioners of Jay County, Ind.:*

"We, the appraisers appointed at your May special term, 1889, to apportion $7,693.95 additional cost of construction of the Hickman free gravel road, pursuant to notice from the county auditor, met at his office on the 28th day of May, 1889. After being duly qualified, proceeded to make and file the following additional assessment of $7,693.95 upon the lands and town lots as heretofore reported and assessed."

Then follows a list of the lands, with the amount reassessed against each tract, which was signed by the committee and duly verified before the auditor.

Thereupon the appellants whose lands are alleged to be assessed for the construction of the Hickman free gravel road, and each of whose lands are alleged to be assessed with an additional assessment on said road under the order of the board of commissioners made at their May special session, 1889, appeared, moved the board, in writing, to dismiss the proceedings because "the same was commenced by the board of commissioners at its special session, to wit, at the May special session, 1889, and the same was set for hearing at a special session of said board, to wit, at July special session, 1889. Wherefore they say that said court had no jurisdiction of the subject-matter of these proceedings, nor of the person of these respondents."

The board overruled the motion, and they filed a paper they call an exception, in which they object and except,

severally and specifically, to the confirmation of said additional assessment against their lands, and against the lands of each of them severally and specifically to the confirmation of said additional assessment, for the reasons:

"1st. That no notice was given of the time and place where said viewers would meet to view said road and make said assessments.

"2d. That said assessments were not made by actual view of the lands assessed, but were made by said committee or viewers in the city of Portland, more than ten miles from the lands assessed, and without any review of said lands whatever.

"3d. That the lands of these exceptors and others along the line of said road, and reported benefited by the construction, were originally assessed for the construction of said road in the sum of $4,663; that before placing the same upon the duplicate, the auditor added to the same 40 per cent., making the sum of $1,865.25, making, in all, the sum heretofore assessed against the land of these exceptors and others, for the construction of the said road, the sum of $6,528.20, all of which was, and is, a lien upon the lands of these exceptors and others; that of said sum, these exceptors have paid all installments due thereon against them, and are willing to pay the residue, but they would show that the total cost of said road was only $5,662, or $866.20 less than the assessments heretofore made, and which they have paid, or are willing to pay, as aforesaid.

"4th. That the assessments heretofore made against the lands of these exceptors, for the construction of said gravel road, were equal to the full benefits of their said lands by reason of the construction of said road, and the said additional assessments are all in excess of the benefits to their lands, and each of them.

"6th. That these exceptors and remonstrators, nor either of them, had any notice whatever of the meeting of the board of commissioners on the —— day of May, 1889, when the said board determined and found that the assessments heretofore made on the lands of these exceptors and others for the construction of said gravel road, were insufficient to pay the cost and expenses of said work, and ordered that the additional sum of $7,-693.95 should be assessed against the lands of these exceptors and remonstrators, nor was any notice whatever given of said meeting of said board in special session on the —— day of May, 1889, when said order was made and said viewers appointed.

"7th. That a part of said deficiency of $7,693.95 was, and is, in large part, made up of illegal fees and costs paid out, and of sums paid out for illegal purposes, which sums were paid out without warrant or authority of law, * * and can not be charged up against them in this re-assessment, which payments were specifically described.

"8th. That on the —— day of ———, 188—, and before the construction of the said free gravel road, a civil engineer and a committee were duly appointed by the board of commissioners of Jay county, who, after being duly qualified, made and reported to the board, a full and complete estimate of the cost and expenses of said road, which was ——— dollars, which was duly approved by the board; that afterwards, on the —— day of ———, 188—, a committee duly appointed by said board to apportion the expenses of said work, among the owners of said lands, reported benefited made a report, which was duly confirmed by said board; that the sum so reported by said committee, to wit, $4,663, with the sum of $1,865.20, added by the auditor, making a total sum of $6,528.20, was, by the auditor of said county, placed upon the duplicate of said county and became a

lien against said lands of these exceptors * * , was and is sufficient to pay the contract price for the construction of said work, with all proper and necessary expenses in the construction of the same.  *  * That said road was completed by the contractor in the year 1886, was accepted by the said board of commissioners of Jay county, and is now, and for three years last past has been, a part of the free turnpike system of Jay county.  Wherefore, they protest, etc.

"9th.  They deny that any legal liabilities exist against their lands, on account of the haul of the gravel from other pits than those estimated by the engineer and committee on any account whatever."

These exceptions were overruled by the board, who, after examination of said report, confirmed and approved the same, and ordered the auditor, after deducting the proper credits for the amounts, as heretofore paid, more than the original assessments, to place the same upon the tax duplicate for the year 1889, against the lands and persons named in said report.  Thereupon the remonstrants, appellants, prayed an appeal to the circuit court, which was granted upon the filing of a bond in the sum of $500, with sufficient sureties, etc., which bond was accordingly filed.

In the circuit court, on motion of appellants, appellee was required to file an itemized statement and account of the expenses of said turnpike, or free gravel road, which the court refused to reject, on appellant's motion, and refused to require appellee to comply with the order requiring it to file such itemized account, etc.

Appellants refiled their motion filed before the commissioners to dismiss the cause, and the court overruled the same, and appellants excepted.

There was a trial by the court, which, upon request, made a special finding of the facts, and stated its con-

clusions of law thereon, to which conclusions appellants excepted.

"The court finds that on the —— day of June, 1881, on a petition signed by five land-owners for the location of a free gravel road, and bond to secure costs of preliminary surveys, etc., the board of commissioners appointed viewers and an engineer to view the said gravel road which had been described, and was the road now in question; that afterwards said viewers and engineer reported to said board the lands that would be affected by the location of said road and estimated the cost at $4,-800, which report was approved and said road located upon the line* prayed for in the petition, and a committee to apportion the cost and expenses upon the lands affected, as reported by the first viewers, was appointed, said committee made their report to said board; that due notice was given to hear grievances by said board, from the land-owners affected by the location of the same as to why said assessments reported by said committee should not be confirmed; that afterwards, on the 9th of June, 1884, said report was heard and said assessment confirmed on said lands; that on the 16th day of April, 1884, upon due notice, said commissioners let the contract for the construction of said road to J. P. Hickman & Co., for the sum of $4,800, who gave bond to the approval of said board for the completion of said road; that by said contract said Hickman & Co. were to perform the labor and furnish all the materials, except the gravel, which was to be furnished by the board, and said board and engineer were to have the right to change the specifications before the commencement of the work; that such specifications provided that should the engineer desire to make any changes in the profiles and plans by which the work would be augmented or diminished from the original intention, said augmentation to be

paid for at the *pro rata* price of the original contract, and should it be diminished there was to be a *pro rata* diminishing of the price of the original contract; and said specification originally provided that after the road-bed or sub-grade is accepted by the engineer the contractor shall proceed to put on gravel 12 inches deep in the center and 7 inches at the side to the width of 12 feet, and after said specifications and contract were made the engineer changed said specifications, in this, that the contractor should put the gravel on to the depth of 14 inches in the center and 7 inches at the sides, and to the width of 12 feet; that said bid was made upon the specifications and profile furnished by the engineer; that at the time of the original estimate by the engineer the same was based upon obtaining the gravel from the Hickman hill, which was in the center of said road, and that said estimate did not include said gravel; that said road was four miles long, and the Hickman hill was two miles from either end of said road; that after said contract had been entered into and the grade of the roadbed had been constructed, and upon examination and prospecting for the same by the engineer and by the board of commissioners with the tax payers, it was discovered that gravel could not be obtained at the Hickman hill to make said road; that in order to construct and complete said road said board and contractors were compelled to go to the gravel pit of J. B. McKinney in Randolph county, Indiana, one mile south of the south end of said road for gravel to construct the same.

"The court further finds that before going to the McKinney gravel pit, there was a meeting of the tax payers and the board of commissioners and contractors at the Hickman hill, to ascertain whether there was gravel in sufficient quantities to gravel said road, * * and in the presence of the tax payers the contractors were

directed to go to the gravel pit of said McKinney for said gravel, and into Randolph county, for gravel to make said road, the contractors were compelled to haul the gravel on the second south mile of said road, one mile further than if the same could have been obtained at the said Hickman hill, and they were compelled to haul the gravel for the third mile of said road two miles further than if they could have obtained the gravel at the Hickman hill, and that the said contractors were compelled to haul the gravel a distance of three miles further than they would have had to haul it if the gravel could have been obtained at the said Hickman hill, to gravel the fourth mile.

"The court further finds that in the original estimate and specifications * * the gravel on said road was to be 2,061 yards to the mile, and that after the contract was entered into the board of commissioners and engineer * * changed the specifications so the contractors were compelled to put on 2,160 yards of gravel to the mile in the construction of said road; that said road was fully completed by the contractors and accepted by the engineer; that in accepting said road from said contractors, the said engineer made a final report and estimate of the work done by the said contractors in the construction of said road to the board of commissioners of said county, in which estimate and report for work and labor done and materials furnished by the contractors in the building and completion of said road, there was found to be due the contractors the sum of $8,162.29, which sum exceeded the original estimate $3,362.29; that said final estimate was accepted by the board of commissioners, and there was allowed to the contractors by the said board, for the construction of said road, the said sum of $8,162.29, and that there was allowed to J. B. McKinney, by the said board of commissioners, for

gravel upon the said road, the sum of $568.80, which sum was compelled to be expended by the board of commissioners in order to obtain gravel to construct said road, and that the gravel could not have been obtained at any nearer point to said road with which to construct the same; that the commissioners allowed J. B. Sharrett $33.90, for services in prospecting for gravel; to L. J. Craig, $26, for like services, and that at the time such services were performed they were county commissioners of said Jay county; that J. M. Powell & Sons were allowed $9.50 for livery hire for conveying said board to said gravel pits; that J. A. McConnell was allowed $5 for work in opening gravel pits and prospecting for gravel; that J. P. Hickman & Co. were allowed $116.50 for extra labor in the construction of said gravel road; that C. E. Rogers, engineer of said gravel road, was allowed $160 for his services as engineer in superintending the construction of said gravel road; that John J. Bell was allowed $60 as watchman during the construction of said gravel road, and who was so placed as watchman at the instance and request of the tax payers along said road; that J. P. Hickman was allowed $69 for damages and labor occasioned by the opening of the gravel pit at the Hickman hill 　*　*　*; that the heirs of E. J. McConnell were allowed $100 for damages resulting to their real estate by reason of prospecting for gravel thereon; that John T. Hanlin, treasurer of Jay county, was allowed $18.25 for express charges paid out by him for the delivery of bonds sold for the construction of said road; that said board allowed Palmer J. Smith, as auditor of Jay county, $20 for making a transcript of the proceedings and records of said board, relative to the location of said road,　*　* which was made to accompany said bonds in order to show the legality of such proceedings and the issuing of said bonds　*　*, in order to effect

Manor *et al. v.* The Board of Commissioners of Jay County.

the sale of said bonds; that the Sun Publishing Co. was allowed $8 for the publishing a notice in the newspaper of said company relative to the re-assessment on said gravel road, the tax of which re-assessment was held to be invalid; that David Manor, one of the remonstrators in this case, was allowed $4.50 for services rendered on said road as watcher thereon, he being appointed by the tax payers to represent them in the opening and prospecting for gravel at the Hickman hill; that John T. Hanlin, treasurer of said county, was allowed $65.52 interest paid on gravel road warrants by him as treasurer of said county, said interest being due; that said treasurer was allowed $300 for interest paid on gravel road bonds that were sold for the construction of said gravel road, which interest was due at the time it was so paid  *  *  * ; that said treasurer was allowed $6.40 as error in taxes, *  *  which was credited to said treasurer for errors that occurred on the tax duplicate of said road; that David F. Hoover, as treasurer of Jay county, was allowed $1,502.83 for interest paid on gravel road bonds, which bonds had been sold for the construction of said road  *  * ; that said Hoover, as such treasurer, was allowed $27.29 for collecting taxes on said gravel road; that said David F. Hoover, as such treasurer, was allowed $6.35 for errors in taxes on said gravel road; that said David F. Hoover, as such treasurer, has been allowed $3,000 for principal of said gravel road bonds paid by said Hoover, as treasurer of said county, which bonds had been sold by said board of commissioners for the construction of said gravel road; that Palmer J. Smith, auditor of said county, has been allowed $94 for making out tax duplicate of said gravel road; that said auditor was allowed $216.65 for the use and benefit of Jay county, which was allowed to cover expenses of preliminary survey and expenses of said gravel road, and which

was credited to the county fund by said auditor; and that no money was paid to said auditor on said warrant.

"The court further finds that the total cost of the construction of said gravel road, as allowed by said board of commissioners, * * including the amount paid to the contractors, damages for prospecting for gravel, and amount of money paid for the gravel on said road, and for the labor of the engineer, and for all labor and work on said road, the sum of $9,567.49.

"The court further finds that there were issued and sold, by the said board, bonds to the amount of $10,000, bearing 6 per cent. interest, and falling due annually after two years, which were sold at a premium of $120; and that there are outstanding and unpaid of said bonds $7,000.

"The court further finds that there has been allowed by said board, against the sum arising from the taxes on said road, the sum of $9,567.49, the last of which allowances was made on the 16th day of June, 1889.

"The court further finds that no appeal was ever taken by either of the remonstrators to this suit, or any one else, from any of the allowances made on said road by said board; that the estimated expenses and the interest on the bonds issued on said road were and are $2,425.61, making a total cost of construction $11,993.10.

"The court further finds that the amount of taxes levied against the lands affected by the construction of said road, for the construction thereof and for the payment of the bonds sold thereon, was the sum of $10,818.17, of which $4,289.97 was illegally assessed, and part of which was paid by the tax payers; that there has been collected as taxes by the treasurer of said county, on said road, the sum of $8,008.24.

"The court further finds that after the collection of said

taxes there remains, and now is, a deficit of $3,984.86 in the funds of said road.

"The court further finds that heretofore, to wit; on the 22d day of May, 1889, the board of commissioners of said county, in special session, ascertained the amount of the deficit in the fund of said road, and appointed Jonas Votaw, William H. Harkins and Nimrod Headington, resident householders and freeholders of said county, disinterested persons, to make and apportion upon the lands heretofore reported as benefited, and liable to be assessed for the construction of said road, which had been assessed for the construction of said road, the proportionate amount of said deficit, and directed them to meet at the auditor's office of said county on the 28th day of May, 1889, and proceed to make said apportionment and assessment; that the auditor of said county issued his warrants to said viewers and committee, notifying them of the time and place of meeting to make said apportionment and assessment; that said warrant and notice was duly served on said committee in obedience thereto and as commanded therein; said committee did meet at the time and place therein specified and proceeded to make the apportionment and assessment as directed; that said committee made their report to the board of commissioners on the 9th day of June, 1889, which report contained a full and complete list of all the land assessed as benefited in the original proceedings, and the location of said road.

"The court further finds that the auditor of said county caused a notice to be given as required by law, in the Portland *Sun,* a weekly newspaper printed and published in said county, which notice was published for three consecutive weeks, and in which notice each and every person affected thereby was notified of the pendency of said report, and named therein a day, to wit: July 10th,

1889, on which said board would meet at the auditor's office of said county and hear the same; that on the day named in said notice the said board did meet at the county auditor's office in said county, at which time and place the remonstrators in this action appeared pursuant to said notice and filed their objections and exceptions in writing, as stated in the pleading in this case, which said remonstrance and exceptions were heard and overruled by said board, and said report was confirmed by said board, which action of the board, in confirming said report, was entered upon the records together with the report as confirmed, showing how the said estimated expenses had been apportioned upon the lands ordered to be assessed as aforesaid, and directed the auditor to place the same upon the tax duplicate against the lands reported as assessed.

"The court further finds that the benefits to the lands affected by the construction of said road exceed the cost of construction thereof and the additional assessment made thereon."

And the court states its conclusions of law as follows:

1st.   That the item of $8,162.29, the amount allowed the contractor for the completion of said road by said board, was proper to be allowed by said board and was properly chargeable to the fund of said road, because of additional extra work in the hauling of gravel from the pit of J. B. McKinney instead of the Hickman hill.

2d.   That the item of $568.86, allowed by the said board to J. B. McKinney for gravel for the construction of said road, the allowance of $5 to J. A. McConnell, the allowance of $116.50 to J. P. Hickman & Co., for extra labor and work in the construction of said road, the allowance of $160 to C. E. Rogers, engineer of said road, for superintendence of said road, the allowance of $60 to John B. Bell as watcher during the construction of said

Manor *et al. v.* The Board of Commissioners of Jay County.

road, the allowance of $69 to J. P. Hickman for damages and labor occasioned by the opening of a gravel pit at the Hickman hill on the lands of said J. P. Hickman was necessary to the completion of said road, the allowance made to the heirs of E. J. McConnell of $100 for damages resulting to the real estate of said heirs by reason of prospecting for gravel upon the lands of the said heirs of the said E. J. McConnell, the allowance of $18.25 for express charges paid by John T. Hanlin as treasurer of said county for the delivery of the bonds sold for the construction of said gravel road, the allowance of $20 to Palmer J. Smith as auditor of said Jay county for making transcript of the record of the board of commissioners relative to the location of said gravel road and for the sale of the gravel road bonds, the allowance of $4.50 to David J. Manor as a watcher on said road, the allowance of $65.52 to John T. Hanlin as treasurer of Jay county for interest on gravel road bonds, the allowance of $300 to said Hanlin as such treasurer for interest paid on gravel road bonds, the allowance of $6.40 to said Hanlin as such treasurer on account of errors in taxes, the allowance of $1,502.83 to David F. Hoover as treasurer of said county for interest paid on gravel road bonds sold on said road, the allowance of $27.29 to said Hoover for collecting taxes as treasurer, the allowance of $6.35 for errors in taxes to said Hoover, the allowance of $3,000 to said Hoover as treasurer for payment of principal of gravel road bonds sold on said road, the allowance to the auditor of said county for the preliminary expenses of said road, each and all of said allowances were made by the board of commissioners of said Jay county against the fund of said gravel road, and were properly so allowed and should stand chargeable to the fund of said gravel road.

The allowance of $9.50 to J. M. Powell & Sons for

livery hire, the allowance of $33.90 to J. B. Sharrett for prospecting for gravel, the allowance of $26 to L. J. Craig, commissioner of said county; the allowance of $8 to the Sun Publishing Co., for publishing notice, and the allowance of $94 to Palmer J. Smith, auditor of said county, for making tax duplicate, were not proper allowances and should not be chargeable to the fund of said road.

That said assessment should stand against the lands affected by said road as apportioned by the viewers for the deficit, amounting to $3,984.86, less the items mentioned in the last five conclusions herein, amounting to $161.40, to be apportioned by the auditor of said county for the purpose of paying the outstanding bonds, and indebtedness occasioned by such deficit, upon the ratio and proportion to be fixed by said auditor.''

Appellants excepted to each of these conclusions of law. They moved for a *venire de novo*, which was overruled, and they excepted; thereupon the court rendered a judgment re-assessing said lands for the amount of the deficit as found by the court, namely, for $3,823.46, instead of $7,693.95, the amount of deficit found by the board of commissioners to exist, which re-assessment is set out in full in the record. Afterwards the court overruled appellants, motion for a new trial.

The overruling of the motion to dismiss the cause is the first alleged error assigned.

It is contended, with much apparent earnestness, that as the proceedings for the reassessment of the lands took place at a special term of the board of commissioners, and not at a regular session, the proceedings were void for want of jurisdiction, on that account.

It is settled in this State, that such proceedings may be had at a special session as well as at the regular session of the board of commissioners of the county. *Stipp* v.

*Claman,* 123 Ind. 532; *White* v. *Fleming,* 114 Ind. 560.

It is further contended that the motion to dismiss for want of jurisdiction was well taken, even if such matters might be acted on at a special session, because, as is claimed, the board had not acquired jurisdiction over the subject and the persons of appellants when the order for a re-assessment was made at the May session, because appellants were not notified, and, we presume, because no petition had been filed before the board calling into exercise their powers. If the board had not acquired jurisdiction over the subject and parties, then the circuit court would be without jurisdiction over either, on appeal, and the motion to dismiss the cause for want of such jurisdiction must prevail.

It has been settled by this court that the board of commissioners has authority to make an additional assessment to pay the cost of the improvement, in case the original assessment proves insufficient, in free gravel road cases, and that the board, of its own motion, without a petition, may direct the levying of an additional assessment. *Board, etc.,* v. *Fullen,* 111 Ind. 410; *Tucker, Treas.,* v. *Sellers,* 130 Ind. 514.

It appears, from the record, that July 10, 1889, was fixed by the board for the hearing of objections to the report of the committee to re-assess and apportion the deficit on the lands affected, and that all the appellants were notified thereof by a publication notice in the Portland *Sun,* a weekly newspaper printed and published in said Jay county, for three consecutive weeks; and that said board did meet at the auditor's office in said county, on said day, where appellants appeared, pursuant to said notice, and filed their objections and exceptions in writing to said report, and, after hearing the said exceptions, the board overruled the same.

It has been held by this court, that such a notice is sufficient to confer jurisdiction of the persons of the owners of the lands affected.    *Tucker, Treas.,* v. *Sellers, supra.*

Therefore, the court had jurisdiction of the subject and the parties, and did not err in overruling the motion to dismiss.

The next assignment of error calls in question the overruling of appellants' motion to reject an itemized statement of expenditures of the road, and to require appellee to file a complete itemized statement of such expenses.    The statement sought to be rejected had been filed at the instance of appellants, under the order of the court.    The motion to reject and to require a fuller one to be filed, did not point out any objection to the one filed.    It was as follows:

The preliminary expenses of the Hickman gravel road................$1,288 70
Total cost of construction.......... 8,278 79
Estimated expense and interest on bonds........................ 2,510 61
                                                    _____
                    Total..............$12,078 10

In support of appellants' contention that such itemized statement ought to have been required, and that this one was not sufficient, we are referred to section 363, R. S. 1881, and decisions under it, regulating the practice in civil cases under the code.

We do not think this proceeding is one regulated by the code of civil procedure, but is a special proceeding provided for by the statutes authorizing the construction of free gravel roads.    It is very doubtful whether a demand for such a statement could have been rightfully made in the commissioners' court, and if not in the com-

missioners' court, it could not be in the circuit court on appeal.

Be that as it may, it is clear that it was such a matter as rested in the sound discretion of the circuit court, and in such a case we could not reverse for making or refusing such an order, unless there was an abuse of such discretion, that was prejudicial to the rights of appellants. The record does not disclose any injury to them on account of such refusal, but, on the contrary, it discloses that they got all the benefit they could have obtained by a fuller and more detailed account and statement, in that all the items of expenditure on the road, and items charged against the road fund, were duly litigated in the trial.

The next error assigned calls in question the correctness of the conclusions of law. The conclusion numbered 18 is most seriously assailed. In that conclusion it is stated that the $3,000 allowed to David F. Hoover, as treasurer, for principal of gravel road bonds sold on said road, and paid by him, was properly chargeable against the fund of the road. The findings of fact show that said treasurer paid said sum of $3,000 on said principal, and he probably paid it out of funds other than the gravel road fund. The conclusion is that it was a proper allowance against the gravel road fund belonging to said road.

It is complained that this item can not be added to the cost of construction and incidental expenses, because the payment of the principal of the bonds is no part of the cost of such construction. In other words it is contended that the full cost of construction and incidental expenses furnish the measure and limit of the amount of tax to be levied, and that nothing else can be added to augment that amount; that nothing else can be charged against the gravel road fund so as to increase the amount

to be levied against the lands affected. We think this contention is correct, but while the conclusion objected to states that the allowance to the treasurer was a proper one, and that the $3,000 paid by him on the principal of the bonds sold in that case was chargeable against the fund of the road, yet the whole findings and conclusions of law show that said $3,000 was not added to the cost of construction and incidental expenses of the work. The payment of that $3,000 was properly chargeable against the fund of the road raised by the sale of bonds, and the treasurer was entitled to a credit as against that fund on account of such payment. That that was what the court meant, and nothing more, by the conclusion stated, is made clear when it appears, as it does from the record, that the said $3,000 allowance was not added to the cost of construction and incidental expenses, and the court did not allow it to augment the deficit for which the re-assessment was made. For these reasons we are of opinion that the court did not err in that conclusion of law.

It is next objected that the conclusion of law that the allowance of $27.29 to David F. Hoover, as treasurer, for collecting taxes assessed for the benefit of the fund of the road, was wrong, because it is contended no provision is made for its payment out of the road fund.

It has been frequently declared by this court that it is the policy of the statute to impose upon lands specially benefited by the construction of a free gravel road the burden and expense of such construction, and to relieve the county of such burden. *Tucker, Treas.,* v. *Sellers, supra; Rogers* v. *Voorhees,* 124 Ind. 469; *Board, etc.,* v. *Fullen,* 118 Ind. 158; *Strieb* v. *Cox,* 111 Ind. 299.

Counsel for appellants cite sections 5927 and 5928, R. S. 1881, and insist that the provisions thereof cover the collection of all funds collected by the treasurer, and no

provision is therein made for charging any part of the treasurer's compensation to any other fund except the fund that belongs to the county. The first section provides that the treasurer shall be allowed $800 per annum, to be paid out of moneys belonging to the county. The next section, 5928, provides that "county treasurers shall also charge and receive, as a further compensation, at the rate of one per centum on the first one hundred thousand dollars of taxes by them collected, and on all sums collected in excess thereof, one-half of one per cent. They shall also receive and retain, out of all delinquent taxes collected, six per centum when paid voluntarily, and the same if paid after levy."

The fair and reasonable interpretation of this section is that the treasurer is entitled to retain his per centum out of the taxes collected. If so, then clearly the treasurer must be paid and receive his per centum for collecting gravel road tax out of the tax collected, or it is chargeable to that fund. This interpretation harmonizes these provisions with the free gravel road law, the policy of which, as we have seen, seeks to shield the county from the burdens of the construction of such roads and place it upon the lands specially benefited thereby.

We, therefore, hold that the conclusion of law that the allowance to the treasurer of $27.29 was properly chargeable against the fund of said road was not erroneous.

The next error assigned calls in question the ruling of the court in overruling the motion for a *venire de novo*. The motion was based on two reasons, namely, that the special findings are too uncertain, and that the court does not find on all the issues.

We have examined the special findings and considered the matters of uncertainty in them pointed out in appellants, brief, and while they may not be as aptly and

skillfully drawn as they might be, yet, we think they are sufficiently certain to support the judgment the court pronounced upon them.

It is further complained, under this head, that the court did not find either pro or con, on the matter put in issue by the exceptions that the committee to apportion, etc., did not do so by actual view of the lands, but did their work in the auditor's office, ten miles away from the lands. The burden of this issue was on the appellants, and a failure to find either way thereon was equivalent to a finding against them as to that issue. *Hunt* v. *Blanton,* 89 Ind. 38; *Dodge* v. *Pope,* 93 Ind. 480; *Quick* v. *Brenner,* 101 Ind. 230; *Cincinnati, etc., R. W. Co.* v. *Gaines,* 104 Ind. 526; *Quill* v. *Gallivan,* 108 Ind. 235; *Stone, Admr.,* v. *Brown,* 116 Ind. 78; *Louisville, etc., R. W. Co.* v. *Hart,* 119 Ind. 273.

The same is true of the issue as to failure to notify appellants of the time and place of the meeting of the committee to make the apportionment. Besides, there is no law which makes it necessary to notify the owners of lands to be affected, of the time and place of the meeting of the committee to make the apportionment.

The next error assigned calls in question the ruling refusing a new trial. It is contended that the finding is not supported by the evidence. Appellants, counsel say that the final estimate of the engineer put in evidence includes every item of the cost of the road, and is only $8,162.29; and that there had been collected of said taxes $8,095.24. And this, it is claimed, would only leave a deficit of $67.05. That is true, but counsel wholly omit in their calculation the interest on the bonds sold, and the amount paid for the gravel. That must come out of the fund of the road, to be raised by taxation.

Counsel further say that the court found that "the total cost of the construction of the road, including the

amount paid to the contractors, damages for prospecting for gravel, and amount paid for gravel on said road, and for the labor of the engineer, and for all labor and work on said road amounted to $9,567.49, and that there had been collected by the treasurer on the assessments on said road $8,008.24," and conclude by saying they find a deficit of $3,984.86; say counsel, according to these figures, the deficit could not exceed $1,559.25, which would include the $161.40 allowed the auditor, etc., that the court holds to be improper charges against the funds of the road. And so it is. But counsel for appellant lose sight of an important item that entered into the court's finding from the evidence, and that is the estimated expenses and interest on the bonds, $2,425.61.

The total cost, etc., found by the court, as we
have seen, was ...:.....................$9,567 49
Deduct taxes collected..................... 8,008 24

$1,559 25

From this remainder, take the five items the
court held not chargeable to the fund of the
road ............................... $161 40

$1,397 85
Add the interest on the bonds.............. 2,425 61

Amount of the deficit .....................$3,823 46
as fixed by the judgment of the court below.

The evidence, we think, justifies the finding and judgment in this respect.

It is insisted that the finding was a total disregard of the evidence on another issue, namely, that the exceptions and objections to the report of the committee, that they did not apportion the re-assessment by actual view, but did so in the auditor's office, ten miles away from

the lands. The evidence was amply sufficient to support this objection to the confirmation of the report, but, on appeal, the case, including all objections to the report, as well as the necessity of making a re-assessment at all, must be tried *de novo;* and if the necessity for the re-assessment is adjudged to exist, it is made by the circuit court, and the old re-assessment is superseded by the appeal, and hence it is not a material question how it was made. *Corey* v. *Swagger*, 74 Ind. 211.

Another one of the grounds for a new trial was receiving the evidence of the allowance and payment of $21.40 to John Sharrett for prospecting for gravel, but the court, in its special finding and conclusions of law, adjudged that that item was not chargeable against the fund of the road, and hence the error, if any, was harmless.

The court received in evidence, over the appellants' objection, the final report and estimate of the engineer, which was a paper in the cause, and had been entered on the record of the commissioners in that case. It was received by the court because it was a paper in the cause. The paper in question being a part of the record in the cause on trial, was already before the court without being introduced in evidence, hence there was no error in formally introducing it in evidence. *School Town of Monticello* v. *Grant*, 104 Ind. 168.

The same is true of the objection to introducing in evidence the record entries concerning the issue and sale of the $10,000 of bonds. The same is also true of the commissioners' record, where they found the deficit to be $7,693.

A motion to modify the judgment was overruled, which is questioned by the assignment of error. There was no error in overruling this motion, as the evidence was sufficient to support the finding of the court. The

court below rightfully overruled appellants' motion to tax costs against the appellee. Counsel virtually concede it would require legislative action before costs could be taxed against the commissioners in a case like this.

We find no error in the record for which the judgment should be reversed.

The judgment is affirmed.

Filed Oct. 14, 1893.

### ON PETITION FOR A REHEARING.

McCABE, J.—In a strong petition for a rehearing, appellants' learned counsel insist earnestly that we erred in our original opinion:

1. In holding that the act of the committee in making the apportionment of the additional assessment in the auditor's office, ten miles away from the lands assessed, instead of going to and viewing the lands, made no difference on the appeal.

2. In holding that such apportionment was superseded by the appeal to the circuit court, and, therefore, not material how it was made.

3. In holding that there was no error in overruling the motion to modify the judgment.

4. In failing to pass on or decide the assigned error of admitting in evidence the report of the viewers or committee to apportion the assessment.

It is a sufficient answer to the last point made for a rehearing, that we waded through a record of over three hundred pages of printed matter containing a special finding, conclusions of law, motion for a new trial and a vast mass of evidence and exceptions to rulings in relation thereto, carefully read the able and exhaustive brief of appellants, considered and decided every question raised by every alleged error pointed out in such brief. But the brief did not point out the alleged error

assigned now as the fourth ground for a rehearing. Life is too short, and the duties and responsibilities of this court to other appellants in other causes are too great, to justify us in looking, or searching the record, for errors beyond those pointed out in the appellants, brief, for the purpose of reversing the judgment below.

Questions waived by silence of the original brief can not be presented to this court on a petition for a rehearing. *Schafer* v. *Schafer*, 93 Ind. 586; *Fleetwood* v. *Brown*, 109 Ind. 567; *Union School Tp.* v. *First Nat'l Bank, etc.*, 102 Ind. 464; *Thomas* v. *Mathis*, 92 Ind. 560.

But the error of admitting in evidence the report of the committee to apportion the assessment was a harmless error, if error at all, because the court made an entirely different apportionment, and wholly disregarded the one made by the committee, which was entirely proper. *Fulton* v. *Cummings*, 132 Ind. 453.

The first ground assigned for a rehearing is in substance a contention that the special finding was contrary to the evidence, or that it was not supported by sufficient evidence. And the particular defect supposed in the evidence is that the undisputed evidence showed that the apportionment made by the committee appointed by the board for that purpose, was made in the auditor's office ten miles away from the lands without seeing or viewing them.

The appellants' learned counsel have wholly failed to point out, in their brief for a rehearing, what fact essential to the maintenance of the judgment below this evidence controverts, or in what way the fact thus established militates against the finding or judgment of the circuit court. That judgment was an apportionment of the amount of the deficiency arising from a previous assessment and apportionment on the lands benefited by the gravel road. The apportionment by the circuit court

Manor *et al. v.* The Board of Commissioners of Jay County.

was not only entirely different from that made by the committee, but the deficit itself was found by the circuit court to be only $3,823.46 instead of $7,693.95, as found by the commissioners.

We held in the original opinion that the report of the committee was superseded by the appeal, and that it did not make any difference how the committee reached their conclusions, whether by proper or improper methods. If by improper methods, it was a good cause for the board to set aside their report and require them to do the work properly or commit it to a new committee.

In an appeal of a gravel road case, *Black* v. *Thomson*, 107 Ind. 162, this court, at page 165, said: "It is conceded by all parties that the board of commissioners acquired jurisdiction in this case when the petition was filed, and that consequently it had authority to appoint viewers and an engineer in the first instance. However irregular, therefore, the subsequent proceedings may have been, the jurisdiction thus acquired was not lost. * * Whether regular or irregular, these subsequent proceedings were vacated by the appeal to the circuit court, where the cause stood for trial *de novo*, and not, as in an appellate court, for the review and correction of errors. *McMullen* v. *State, ex rel.*, 105 Ind. 334; *Fleming* v. *Hight*, 95 Ind. 78; *Munson* v. *Blake*, 101 Ind. 78.

"Such subsequent proceedings being vacated by the appeal, nothing disclosed by them, whether of omission or commission, afforded any cause for dismissing the petition."

The irregularity here complained of, was the omission to go to the lands and apportion the assessment on actual view of the same.

We do not decide whether that was necessary to a valid apportionment. But if it were necessary, then such omission was a mere irregularity that has, and can have,

no effect whatever on a totally different apportionment made by the circuit court on appeal.

In another gravel road case, *Hardy* v. *McKinney*, 107 Ind. 364, after quoting the general statute allowing appeals from boards of commissioners on page 369 it is said: "Under this provision of the statute it has always been held that appeals from commissioners stand for trial *de novo* in the circuit court, that is that all matters in issue before the commissioners stand for trial anew in the circuit court, and not for review or correction as in a court of errors. As a necessary consequence, it has been further held that such appeals suspend all the proceedings had upon questions in issue before the commissioners, and that such proceedings can not either be used, or taken into consideration, upon the trial *de novo* in the circuit court."

The report of the committee apportioning the assessment, and the method adopted by them in making the apportionment, are a part of the proceedings before the board, and can not be taken into consideration upon the trial *de novo* in the circuit court. It, therefore, follows that whether that committee proceeded properly or improperly, regularly or irregularly, to make the apportionment, made a correct or grossly incorrect apportionment, can exert no influence on the trial of the question of fact presented by the exceptions to that report on appeal, the object of which is to secure a correct apportionment by the court. It would be like offering proof on appeal from a justice of the peace, that the verdict of the jury before the justice had been arrived at by chance, and, therefore, ought to be set aside. That sort of evidence would have no bearing on the issue whatever. It would neither tend to show that the finding or verdict on appeal should be for the plaintiff or the defendant. And so here. The fact that the committee made the ap-

portionment in the auditor's office, ten miles away from the land, without viewing or seeing the same, does not tend to prove that there should be no apportionment of the assessment against appellants' lands, nor a smaller or larger apportionment against them. Therefore, the undisputed evidence of the fact as to how, when, or where the committee made their apportionment does not contradict, or tend to contradict or overthrow, any fact or any evidence essential to the support of the special finding and judgment of the court.

What we have just said disposes of the second ground assigned for a rehearing, namely, that we erred in holding that the report of the committee is superseded by the appeal to the circuit court.

Counsel argue against that holding, that "the report of the viewers in this case is the complaint, the notice issued is based on this report, and the land-owners are notified of the time when the commissioners will meet at the auditor's office 'to hear the same.' The statute gives the commissioners the right, where exceptions are filed, to hear the same. After such hearing they may confirm such report, or change the same, or refer the same to a new committee. * * * This is all the commissioners could do in the premises, and, we suppose, this is all the circuit court could do. If we are not correct in this position, and the report of the viewers is not before the court the same as it was while it was pending before the board, there is absolutely nothing in the evidence, or anywhere in the case, to authorize the court to make or confirm any assessment against any one."

From this we infer that appellants' position is that the circuit court, on appeal, can do nothing but the same things the board could do, namely, "either confirm said report or change the same, or refer the same to a new committee," etc.

In this, counsel are in error.

In *Hardy* v. *McKinney, supra,* at p. 370, this court said: "In appeals to the circuit court in causes like the one in hearing, and in all analogous cases, the court or jury trying the same succeeds to all the substantial duties which devolved upon the viewers and reviewers before the board of commissioners as to the matters which stand for trial *de novo,* and a finding or verdict in detail upon all the matters in issue between the parties is contemplated. This includes the assessment of benefits, and the allowance of damages in cases in which damages ought to be allowed. The finding or verdict ought to be sufficiently specific upon every question involved to authorize a judgment finally determining all the matters in controversy, and leaving nothing for the adjudication of the commissioners in the event that the cause shall be certified back to them."

It is a mistake to suppose that the report of the committee making apportionments in such cases performs the office of a complaint. It is more in the nature of verdict or finding of facts. When it is returned to the auditor's office, he gives notice thereof, and when the matter will be heard. If no exceptions thereto in writing are filed, it is confirmed, as matter of course, by the commissioners, just as a judgment is rendered on a verdict, without proof or evidence of its correctness. 3 Burns's Rev. St. 1894, section 6860.

This confirmation has the effect of a judgment. *Loesnitz* v. *Seelinger,* 127 Ind. 422.

If it were in the nature of a complaint, no judgment could be rendered on it without proof of its correctness or truth, that is, where amounts are involved, they must be proven. The exceptions filed are in the nature of objections to a verdict or finding.

It is very clear that we were right in holding, in the

Manor *et al. v.* The Board of Commissioners of Jay County.

original opinion, that the appeal to the circuit court superseded the report of the committee apportioning assessments, and that evidence that the committee adopted a supposed wrong method, in reaching their conclusions, had no bearing on the trial of the issues in the circuit court.

The third ground assigned for a rehearing is the last one we have to consider, namely, that we erred in holding that the trial court rightfully overruled the motion to modify its judgment.

The ground assumed in that motion is that the deficit found by the commissioners to exist was $7,693.95, and that the court only found it to be $3,984.86; only 49¾ per cent. as much as the commissioners had found it to be. They therefore asked that their respective apportionments, as made by the circuit court, should be so reduced as to make them 49¾ per cent. of the amount apportioned to them by the committee in the commissioners' court.

Appellants have assailed the work of the committee as being vicious and void, on account of a failure to comply with the statute in making their apportionment, and they have kept up this assault until they come to argue in support of their motion to modify the judgment. In that argument, they take the opposite ground, and that is, that the apportionment of the committee was absolutely correct. The motion assumes that the only wrong done them was by the board in finding the deficit too large. But, aside from this, there was no error in overruling the motion to modify, for the reason, that if the apportionment made against appellants' lands was too high, was too much, it furnished no ground for a motion to modify the judgment. The proper remedy was by motion for a new trial.

The petition for a rehearing is therefore overruled.

Filed April 3, 1894.